STELLA F. ROBBINS v. JOHN B. ROBBINS, Plaintiff in Error.

Division Two, May 26, 1914.

1. **RESULTING TRUST: Sufficiency of Evidence: Purchase of Lot.** Defendant worked for a street car company, earning $60 per month, from which he says he was always able to save something, after paying the household expenses of him-

self and wife, and those savings he placed in a bank, but how much he actually did save per month he cannot remember, but he does claim that all the $800 placed in the bank was the earnings of himself and not the earnings of his wife. During the same three years his wife earned $450 a year, or $1350 in all, teaching school, and her corroborative evidence is that her expenditures for clothing were moderate, and defendant does not show how she squandered or spent this $1350. She says that most of the money that was deposited in the bank was hers. *Held*, that the evidence is sufficient to sustain a decree that at least one-half of the $680, drawn out of the bank and used to purchase a lot, the title to which was taken in the husband's name, was the wife's money.

2. ————: ————: Improvements. After the lot was purchased and the title taken in the husband's name, the wife continued to teach school for nine years, part of the time at $50 per month and the remainder at $70, and she says that at the end of eight years she handed to him $1100 to pay off an incumbrance created to place a house worth $1900 on the lot, the title of which was in her husband and which had been bought largely by her money, and the evidence is undisputed that $1100 was used at that time to remove the lien. She says she had maintained an economical life during those years, and saved her money, in order that she might assist her husband in paying for the house, and that they might have a home; and he cannot explain what she did with her money during those years unless it was so used. During those years his earnings were $60 per month most of the time, and a part of it probably $100 per month, out of which he claims he paid the household expenses, and from his savings and money he had about the house paid the entire $1100 incumbrance. *Held*, that the evidence is sufficiently cogent and convincing to support a decree that the wife's money paid at least one-half the cost of the house.

Error to Jackson Circuit Court.—*Hon. Walter A Powell*, Judge.

AFFIRMED.

*Bruce Barnett for plaintiff* in error.

(1) The plaintiff must establish beyond reasonable doubt the facts necessary to constitute a resulting trust. Reed v. Sperry, 193 Mo. 173; Brinkman v. Sunken, 174 Mo. 715; Burdette v. May, 100 Mo. 16.

That plaintiff has not established beyond a reasonable doubt and that she has not established by the preponderance of the evidence and that she has brought forth no evidence whatsoever of a direct nature that any of her earnings were invested in the real estate cannot be controverted. We call attention to the language of the decree in which the court recites that it cannot be determined what amount of money plaintiff invested in the real estate, and we submit that a reading of the evidence will show that it cannot be determined that a single dollar of her money ever went into real estate. (2) The only definite statement by plaintiff of money paid by her is that she paid her husband's $200 note to Mason, but this was after the title to the property was acquired, and therefore no trust resulted on that account. Weiss v. Heitkamp, 127 Mo. 31. (3) There can be no advantage to plaintiff by reason of any intermingling of funds. The disadvantage falls upon the one who is responsible for the intermingling, and not upon the other party. Mrs. Robbins testifies that she herself deposited her earnings with Mason, taking receipt or due bill therefor in her husband's name, knowing that her husband also deposited his savings with Mason. Therefore, Mrs. Robbins cannot claim all because a part was hers and intermingled. If both were responsible for the intermingling equity will leave the parties as it finds them.

*C. W. Owsley* for defendant in error; *J. H. Bremmerman* of counsel.

(1) Where land is purchased by one in his own name with the money of another, a resulting trust is created by implication of law which follows the ownership of the money. Baumgardner v. Guessfeld, 38 Mo. 36; Alekire Gro. Co. v. Ballinger, 137 Mo. 369; Jones v. Elkins, 143 Mo. 647; McLeod v. Venable, 163 Mo.

577; Stevenson v. Smith, 189 Mo. 466. The same doctrine pertains where the trustee is the husband and the wife supplies the money. Perry on Trusts (5 Ed.), sec. 127; Broughton v. Brand, 94 Mo. 169; Bowan v. McKean, 82 Mo. 594. (2) If only part of the purchase money is paid by a third person a trust results *pro tanto.* · Perry on Trusts (5 Ed.), sec. 126; Pomeroy's Equity Jurisprudence (3 Ed.), sec. 1038; Bowman v. McKean, 82 Mo. 598; Shaw v. Shaw, 86 Mo. 594; In re Ferguson Estate, 124 Mo. 574; Jones v. Elkins, 143 Mo. 647; McLeod v. Venable, 163 Mo. 536; Johnston v. Johnston, 173 Mo. 118; Donovan v. Griffith, 215 Mo. 167. (3) The remedy being drastic the law has wisely provided that to establish a resulting trust, the proof must be clear, strong, cogent and unequivocal, but it is nowhere held that when the trust is so established, this rigid requirement applies to proof as to the exact amount of the purchase money furnished. It is nowhere held that where a trust is established and a party is unable to show that just so many dollars, no more no less, of his money, was paid for a property in question he must fail. That would be monstrous and this court has never adopted that principle. Crawford v. Jones, 163 Mo. 577. (4) It was nowhere claimed or attempted to be shown that the money of the plaintiff was, at any time, reduced to the possession of defendant by consent of plaintiff in writing and under the law it remained her separate property. R. S. 1909, sec. 1809. (5) Where two contribute to the fund and the conveyance is taken in the name of one the presumption is that the proportions were equal. Shoemaker v. Smith, 11 Humph. 88. Any undue advantage by the use of the marital relation is a legal fraud on the wife, which courts of equity will not allow to stand to her prejudice. Wilbeck v. Wilbeck, 25 Mich. 438; Jennie v. Marble, 37 Mich. 322.

BROWN, J.—Action to establish resulting trust in real estate. From a judgment for plaintiff in the circuit court of Jackson county defendant prosecutes his writ of error to this court.

It is alleged in plaintiff's petition that she and defendant were husband and wife from July 27, 1887, to July 16, 1906, a period of nineteen years, at the end of which time they were divorced. That neither of them possessed any property of consequence at the time of their marriage, nor did they accumulate anything until about the year 1889, when they located in Kansas City, Missouri, and the plaintiff began teaching school, and defendant working for a street car company. Plaintiff alleges that her earnings as a teacher were applied upon the purchase of a town lot in Kansas City, Missouri, the title to which lot was taken in the name of defendant and by him held in trust for her. Wherefore, she prayed that the title to said town lot be divested out of defendant and invested in plaintiff.

The answer was a general denial.

The evidence is quite clear that neither party owned any property of consequence prior to 1889. Each party claims to have earned and furnished the money which paid for the lot in controversy.

The official records of the school district of Kansas City show that plaintiff taught in the public schools of that city during nine months of each year for fourteen consecutive years, beginning in 1889, at $50 per month, and ending in 1904, at $70 per month. Her aggregate earnings during that period as a teacher in the public schools were $7,245.

During the same period of time her husband (defendant) worked, first, there years and seven months for a street car company. He estimates his average wages during that time at $60 per month, out of which he says he was able to save something after paying the ordinary expenses of himself and wife. The re-

mainder of the time, while plaintiff was teaching, he operated a two-chair barber shop of his own, and testifies that his net earnings from said barber shop were $100 per month. He kept no books.

The plaintiff testified that she taught music and other private classes when the public schools were not open, whereby she earned some additional money. The defendant testifies that he traded some in real estate and horses whereby he picked up a few hundred dollars on the side.

In the year 1893 the town lot in controversy was purchased for $680. Plaintiff testified that she had deposited her earnings as a teacher in the Kansas City Safe Deposit Bank until such deposits aggregated about $800; that enough of her earnings were withdrawn from the bank to pay for the lot and leave a balance in the bank of $121. The total price of the lot was not paid at the time of its purchase. There was a $400 mortgage on it, which was paid subsequently; but both parties claimed that the entire cost of the lot was paid out of the funds deposited in the bank before mentioned. Plaintiff was not entirely sure that all the money which went into the bank was hers On cross-examination her evidence runs as follows:

"The money which went into that Savings Bank was mine, and some of John's. John would put in sometimes, but it was mostly mine."

Plaintiff further testified that the bank failed about two months after they finished paying for the lot. On this point she said:

"Two months before the note was due we drew *our* money out, and paid for the lot, and had $121 in the bank, and *we* lost that, of course, and I have since gotten a small per cent. There was enough money drawn from the bank to pay for this lot, and $121 left."

The defendant, testifying in regard to this particular item, stated that the lot in controversy was

paid for out of money deposited in the Kansas City Safe Deposit Bank, but that it was all his money— that none of it was earned by plaintiff. He, however, corroborated the plaintiff as to the failure of the bank, saying: "It failed and got *us* for a hundred and something."

After bank failures became so frequent in 1893 plaintiff and defendant declined to put their surplus earnings into banks. Plaintiff says she kept most of hers in a chamois bag until about the year 1903, when, having accumulated about $1100, she gave it to defendant to pay off an encumbrance created to place a house on the lot before mentioned. Defendant admits this $1100 expenditure about the year 1903, but claims that it was his own earnings which he had kept "about the house" after the bank failure. On cross-examination defendant said: "I won't say she never gave me any money, because when I got hard up sometimes she would give me a piece of money. I could not tell how much. . . . It would be a hard thing for me to tell how much money she has ever given me."

Defendant also testified that there is on the lot in controversy a brick house which cost $1900, and a frame house which he bought and moved onto it, the cost of which seems to have been about four or five hundred dollars; making the total cost of the lot about $3,000. Some expenses were incurred for special tax-bills, but these were probably offset by rents collected.

Plaintiff testified that several years after the bank failure she and defendant deposited some of their earnings with a druggist by the name of Mason; that such deposits were usually made in the name of her husband. Defendant says that when plaintiff deposited any money with Mason she always did so in her own name. Mason, the druggist, was sworn, but he kept no books—issued only due bills to the parties when they deposited with him. In so far as his evidence has any weight it tends to corroborate defendant, who

the witness said was a good friend and a good customer, who bought whiskey of witness but never got drunk. I am impressed with the idea that the memory of witness Mason is too hazy to be of any substantial value to either party.

Plaintiff introduced two wills, each dated August 6, 1896, signed by the plaintiff and defendant respectively. The plaintiff's will purports to bequeath and devise all her real and personal property to her husband, the defendant; and defendant's will purports to devise all of his real and personal property to the plaintiff. Plaintiff further testified that these wills were executed because the property in controversy represented their joint earnings, and, having no children, they desired to bar the claims of collateral heirs to said real estate during the lifetime of each of them.

The defendant admitted that he executed the will to which his name was signed, but claimed he knew nothing about the will which·his .wife executed. He denied that he had ever told John Clough, the attorney who drew the wills and signed same as a witness, that plaintiff had assisted in paying for the town lot in controversy. Both wills purport to have been executed on the same day and before the same witnesses, and are written practically in the same language. John Clough testified that defendant never employed him to draw just one will. Other statements alleged to have been made by defendant to Clough at the time the wills were drawn were excluded.

Mildred Stotts, the mother of plaintiff, testified that after bad feeling arose between defendant and plaintiff as husband and wife, defendant visited her home near Sedalia, Missouri, and told her that "they had had trouble, and that he had been thinking of giving her a divorce, and her part of the property, as she had helped to make it."

Mrs. C. H. McCracken, a neighbor of the Robbinses, testified that she met them both at a birthday

party given by a friend, and was sitting near them when she remarked to plaintiff that she ought to quit teaching—that she had taught so long she was in danger of nervous prostration, whereupon plaintiff replied: "We are paying for our home and whenever we get through with that I am going to stop teaching and rest a while." Defendant heard this conversation but said nothing.

The defendant attempted to prove that during their married life plaintiff was extravagant, buying numerous unnecessary things, and in that manner consuming her salary as a teacher. He was only able to designate two silk dresses as constituting the substantial unnecessary waste of money on her part. On cross-examination defendant admitted that he bought one of the silk dresses, but stated that plaintiff paid for it. Plaintiff's testimony is that she lived very economically while she was teaching, only buying a nice dress about once in three or four years. That she did much of her own sewing and all of her own cooking and washing. That she herself washed and ironed on Saturdays to save expenses of that nature. Four witnesses (neighbors) corroborated her as to her plain dressing and economical mode of living while teaching. The defendant admits that plaintiff purchased for him a $36 suit of clothes a year or so before they separated. He says the clothes were rather better than he needed. This purchase seems to have been made after the lot and improvements thereon were paid for. Taken as a whole, we think the evidence fails to show that plaintiff was so extravagant as to prevent her from saving the money she claims to have invested in the town lot in controversy.

There was other evidence relating to the purchase of personal property by the plaintiff and defendant during their married life, but it has such meager relation to the issues in this case that we will not cumber our opinion with it. The only thing that it tends to

establish is that plaintiff has a somewhat better recollection of expenditures than defendant.

The evidence indicates that during their married life the defendant drank considerable liquor as a beverage, but not enough to impair his ability to work and manage his business.

The trial court found that the net earnings of defendant, after paying the ordinary household expenses, were equal to the earnings of plaintiff as a teacher, and recited that he could not ascertain the exact amount of plaintiff's money which was invested in the town lot in controversy; but, being fully convinced that plaintiff's money paid for at least one-half of the lot and one-half of the improvements made and taxes paid thereon, the court found that she should have a half interest in said town lot, and one-half of the net rents on same collected by defendant since they were divorced, to-wit, $28.75, and gave judgment accordingly; whereupon the defendant brings the cause to this court by writ of error.

Any other facts deemed necessary to a full understanding of the case will be noted in our opinion.

I. Defendant (plaintiff in error) in his brief stands upon the proposition that the evidence is not sufficient to support the decree awarding to plaintiff one-half of the town lot in controversy.

**Resulting Trust: Sufficiency of Evidence.**

According to defendant's evidence the cost of the town lot was about $3,000 in round figures. Who furnished this money? From the time these parties located in Kansas City until the lot was purchased (about three years) defendant worked for a street car company, earning $60 per month, from which he says he was always able to save something to place in the bank after paying rent and their ordinary household expenses. How much he actually did save per month he cannot remember, but he does claim to remember

that all the money placed in the saving bank was the earnings of himself, and not the earnings of his wife. I am frank to say that this evidence does not seem reasonable. It may be true, but it does not sound just that way.

The official records show that plaintiff was earning $450 per year as a teacher during those three years, which would make her aggregate earnings during that time $1350; and her corroborated evidence is that her expenditures for clothing were very moderate during that time. Defendant has not shown how she squandered this $1350, and we think we can safely accept her statement as true when she says that most of the moneys which constituted the $800 fund in the saving bank were her savings. She admits, however, that her husband put some of his money in the bank, but says that what went into the bank was mostly hers. Her own evidence leaves it doubtful about what per cent of the money which went into the bank was hers, but according to her version more than one-half of it was the product of her earnings, and when we consider the admitted fact that defendant was, during that time, only earning $60 per month, out of which he was paying the family expenses, the inference is strong that nearly all the bank fund represented her earnings.

Both parties are agreed that the bank fund paid for the lot. There is certainly very convincing evidence that plaintiff paid more than half of the original cost of the lot—then what shall we say of the subsequent payments? She says she paid $1100 more of her money toward the improvements. Defendant says she did not.

There is one fact which is fully proven. After the lot was purchased plaintiff continued to teach school, and maintained her economical mode of life for nine years for some purpose. Was that purpose to assist defendant in paying for the house placed upon the lot, in order that they might have a home, or

was it for some other purpose which she has not explained, and regarding which even her husband, her daily companion, is not able to give us any substantial light?

We think the conclusion reached by the learned trial judge that the plaintiff contributed at least one-half of the purchase price of the lot and one-half of the cost of the improvements placed thereon is supported by cogent and convincing evidence, so strong as to leave no reasonable doubt in the mind of a chancellor. In reaching this conclusion we have taken into view all the evidence in the case as summarized in our statement of the facts.

The case is one which turns upon the evidence, and not upon the law. Defendant's learned counsel does not deny that plaintiff is entitled to the relief which the trial court gave her if in fact her money did pay half the purchase price of the lot and half the expenses of the improvements placed thereon.

The defendant (plaintiff in error) does contend that the evidence in this case is not as cogent, convincing and direct as is required to establish a resulting trust in real estate, citing Reed v. Sperry, 193 Mo. 167; Brinkman v. Sunken, 174 Mo. 709; and Burdett v. May, 100 Mo. 13.

In the case of Reed v. Sperry, supra, there was no witness who testified that the money of Sperry's wife, which it was claimed he had used in purchasing land in his own name, had ever come into his hands at all (193 Mo. l. c. 175-76). The facts in the other cases cited are likewise so utterly dissimilar to the case at bar that they are not persuasive authority in this case.

Defendant's counsel seems to have brought this case here on the assumption that, because his client denied the facts testified to by plaintiff, there arises such a conflict in the evidence that the plaintiff's case is not proven beyond a reasonable doubt. A similar

plea was interposed, without avail, in Crawford v. Jones, 163 Mo. 577.

Believing that the findings of the learned trial judge are fully supported by the evidence, we affirm the judgment.

*Walker, P. J.,* concurs; *Faris, J.,* concurs in result.