MARY N. HAYNES, Appellant, v. W. B. CARPENTER, Respondent.

**Kansas City Court of Appeals, December 3, 1900.**

1. **Power of Attorney: CONSTRUCTION: COLLECTION: CONVERSION.** The power of attorney from a father to a son conferred authority "to attend to my business, to collect all moneys and obligations due, notes, accounts, settle and adjust any and all business matter of whatever nature, * * * pay and settle up all my debts of whatever character, and draw checks on bank funds of mine and in general do any and all acts and things in the premises which he may think fit and proper," etc. Held, it did not confer power to re-loan money after it had been collected and such re-loaning for long periods constituted a conversion by the attorney in fact.

2. ———: WILL: CONSTRUCTION: EVIDENCE: COLLUSION. A power of attorney and a will construed together show the testator's intention was to have money due or to become due him collected and placed to his credit by his attorney in fact and there wait the disposition provided for in the will; while the evidence shows that the attorney in fact and the executor conspired to compass the defeat of the purpose of the will by a hasty disposition and appropriation of the testator's money.

3. Administration: REMOVAL OF EXECUTOR: WASTE. Where an executor is apprised of the conversion of the testator's money in his life time and refuses to take proper steps to recover the same, he is guilty of gross mismanagement and waste and should be removed from the trust.

4. ———: DUTY OF EXECUTOR: ACCEPTANCE OF NOTE: ESTOPPEL. The fact that an executor accepts notes taken by one who has converted the money of the testator does not discharge the latter from liability, and can not bind persons interested in the estate and not parties to the transaction.

5. ———: REMOVAL OF EXECUTOR: INSTRUCTION. An instruction set out in the opinion relating to the removal of an executor is approved.

Appeal from the Grundy Circuit Court.—*Hon. P. C. Stepp,* Judge.

Reversed and remanded.

*A. H. Burkeholder* and *Hall & Hall* for appellant.

(1)  The power of attorney did not authorize the disposal of the Coleman notes, and S. J. Carpenter was liable for the same, and the law made it the duty of defendant, as executor, to use all due diligence to collect this claim due from S. J. Carpenter, and his failure to do so was a sufficient cause for revoking his letters. The conductor of S. J. Carpenter showed that he knew the power of attorney did not authorize him to sell the Coleman notes or loan or distribute

the proceeds.    Brewing Co. v. Waterworks Co., 34 Mo. App. 49, 56; Carter v. Arnold, 134 Mo. 195, 210; Depot Co. v. Railway, 131 Mo. 291, 305; Rose v. Carbonating Co., 60 Mo. App. 28, 32; Richardson v. Railway, 62 Mo. App. 1, 5. (2)    It was the duty of defendant as executor to file a complete and perfect inventory of the entire estate, including the claim against S. J. Carpenter.    R. S. 1899, secs. 68, 69, 70; Sherwood's Adm'r v. Hill, 25 Mo. 391, 395.    (3)    The law required the executor to obey the directions of the testator in the will to the letter and his failure to pay the plaintiff, the widow, the $1,000 out of the first moneys received was a violaton of his trust for which his letters should be revoked.    Powell v. Hurt, 31 Mo. App. 632, 640, 641; 11 Am. and Eng. Ency. of Law (2 Ed.), 819, and n. 8; 11 Am. and Eng. Ency. of Law (2 Ed.), 824 and n.    (4)    The law required the defendant to use all due diligence in the collection and preservation of the assets of the estate and the burden of proving such diligence rests upon him which he has failed to do.    R. S. 1899, sec. 92; Williams Adm'r v. Heirs of Petticrew, 62 Mo. 460, 471; Booker v. Armstrong, 93 Mo. 49, 59; Powell v. Hurt, 108 Mo. 507, 524; State ex rel. v. Jones, 131 Mo. 194, 210, 211; Darling v. Potts, 118 Mo. 506, 519.    (5)    The defendant as the executor of the estate of R. K. Carpenter deceased, has failed to dscharge his official duties and has wasted and mismanaged the estate and his letters should be revoked.    R. S. 1899, sec. 42; Meriwether v. Block, 31 Mo. App. 170, 177, 179; Link v. Link, 48 Mo. App. 345; 11 Am. and Eng. Ency. of Law (2 Ed.), 831, and n. 2 and 3; 11 Am. and Eng. Ency. of Law (2 Ed.), 891.

*Harber & Knight* for respondent.

(1)    In this case like every other, the burden is on him

to show misconduct, who asserts it, not only the burden of proof, but a strong case must be made out to induce the court to take possession of the property from an executor who has qualified, and given bond for the faithful discharge of his trust, and has taken possession under the will. Haines v. Carpenter, 1 Woods (U. S.) 262. (2) And letters will not be revoked because of any error of judgment on a doubtful question, or mistake of the executor or administrator as to his legal rights. Sparrow's Succession, 39 La. Ann. 696; Gray's Estate, 4 Kulp. (Pa.) 157. (2) The power of attorney was comprehensive enough to cover all the transactions of the attorney in fact, both by letter and by implication. Lamy v. Burr, 36 Mo. 85, 89, and cases cited. (3) Finally, as to the alleged claim, or rather lawsuit against S. J. Carpenter, that appellant insists should have been brought by the executor against said S. J., for conversion of the Coleman notes, we submit furnishes no sufficient ground for removing the executor. There is no pretense but that the executor inventoried every bit of the deceased's property, and accounted therefor in his settlements, which were approved by the court.

SMITH, P. J.—On March 28, 1896, Rufus K. Carpenter was the owner of two promissory notes, one for $3,000 and the other for $1,000, not then due, which were amply secured by deeds of trust on real estate. He was a man advanced in years and in very feeble health, and on the date just mentioned he executed and delivered to his son, S. J. Carpenter, a power of attorney whereby he authorized his said son "to attend to my business, to collect all moneys and obligations *due*, notes, accounts, settle and adjust any and all business matters of whatever nature and to give receipts and acquittances whenever necessary and proper, pay and settle

up all my debts of whatever character and draw checks on bank funds of mine and in general do any and all acts and things in the premises which he may think fit and proper," etc.

On April 28, 1896, the said Rufus K. Carpenter made his last will by which he bequeathed to his wife, Mary M. Carpenter, one thousand dollars, which he directed to be paid to her by his executor, W. B. Carpenter, another son, out of the first funds collected by said executor.

On May 6, 1896, the said attorney in fact sold the $3,000 note to a bank for $2,900, and placed the same to the credit of the said Rufus K. Carpenter in that bank. He transferred the $1,000 note to Christ Carpenter, another brother, in payment, as the evidence shows, of a debt of $600 due by his father to the transferee. It further appears that on the day of the deposit in the bank of the $2,900 the said attorney in fact made a further deposit of $176. It still further appears that on the day last named the attorney in fact, while talking to his father about the proceeds arising from the sale of the $3,000 note, asked if he should distribute the amount among the children and the father replied: "No, that has been provided for."

It further appears that on the previous day the said attorney in fact had caused the bank to make out two certificates of deposit to himself each for $269.90 and one for a like amount to each of three of his brothers, including the defendant, and his stepmother, Mary M. Carpenter, but on the next day, the seventh, these certificates for some reason were cancelled by his direction and so not delivered. He then drew the following checks, as attorney in fact, against the deposit standing to the credit of his father in the bank:

| | | |
|---|---|---|
| To S. J. Carpenter or bearer.........$ | 370 | 00 |
| To S. J. Carpenter or bearer ........ | 533 | 04 |
| To. A. R. Carpenter or bearer ...... | 1,000 | 00 |
| To E. M. Carpenter or bearer ........ | 800 | 00 |
| To T. Herbert or bearer ............ | 333 | 80 |
| To Dr. Kimlin or bearer ........... | 1 | 75 |
| To John Conduit or bearer ......... | 8 | 50 |
| To D. F. Carpenter or bearer ........ | 25 | 00 |
| To N. Mallett or bearer ............ | 2 | 50 |
| To Farmers Store or bearer ......... | 4 | 19 |
| | $3,078 | 78 |

The next day, the eighth, the said Rufus K. Carpenter died.

It is to be inferred from the inventory of the executor of the estate of the said Rufus K. Carpenter that the attorney in fact must have loaned to A. R. Carpenter and E. M. Carpenter the amount for which he drew his checks on the bank in their favor, for the inventory describes two notes made by them payable to Rufus K. Carpenter of like date and amount with the checks, due three years after date. We may infer, too, that the executor received these notes from the attorney in fact and that they were taken by the latter from the makers for the money loaned by him to them. It does not appear that the makers of these notes were or are solvent persons. It seems that at the first settlement of the executor he took credit for five per cent commissions on these notes, though uncollected and not shown to have been solvent.

Mary M. Haynes, the plaintiff in this action, is the widow and second wife of Rufus K. Carpenter. It seems that her stepsons, or at least the attorney in fact and executor, thought that she ought not to have any portion of her hus-

band's estate beyond what she had already received, or at least that she ought not to have the full amount bequeathed to her by her husband's will. The two notes constituted substantially all of the estate of the said Rufus K. Carpenter. The executor, after the death of his father, tried in various ways to induce the plaintiff to accept a less sum for her interest in the estate than she was entitled to under the will. He tried to get others, supposed to be influential with her, to induce her to compromise, as he called it; that is, accept a less share in the estate than she was entitled to.

When plaintiff, after the expiration of the first year, asked the executor to pay the amount of the bequest to her he replied that he yet had two years to settle. Plaintiff then told him that all she wanted was what she was entitled to, and to this he replied that if she wanted to go to law about it that the lawyers hired by the year by his brother Jack, the attorney in fact, and himself "would have a chance." This action was commenced by the plaintiff in the probate court to revoke the letters of the defendant executor, where there was a trial which resulted in an order of revocation; and from that order the defendant appealed to the circuit court where, on a trial *de novo*, the judgment was for the defendant and the plaintiff appealed.

The plaintiff requested the trial court to declare the law of the case to be as follows: "Although said power of attorney may have been sufficient to have authorized said Samuel J. Carpenter to cash said Coleman note for $3,000, it did not authorize him to distribute or loan the proceeds after said Rufus K. Carpenter had told him not to distribute or loan the same, and the loaning or distributing or appropriating to his own use of said moneys by said Samuel J. Carpenter, or any part thereof, was a conversion of the same by him and rendered him liable for the proceeds of said money, and it was

the duty of the executor to collect and recover of said Samuel J. Carpenter said moneys so converted or appropriated or loaned;" which it declined to do and this action of the court is assigned for error.

While the authority conferred by the power of attorney was certainly a very broad and comprehensive one, yet it seems clear that by no fair construction of the granting words thereof can it be held to authorize a re-loan of the money after it had been collected. The declarations and conduct of the testator and that of his son, the attorney in fact, we think conclusively show that they construed it otherwise. It is evident that it was the purpose of the testator to have the money due or to become due him collected and placed on deposit in the bank to his credit to there await the disposition provided in the will. It was well secured and not yet due and it is unreasonable to suppose that the testator would have sanctioned the disposition of the notes at a sacrifice to realize the money on them in order to enable his attorney in fact to appropriate one part of it to his own use and loan without security another and larger part of it to two of the testator's other sons on so long a time when it might be doubted whether they or either of them were solvent. A scheming and unfaithful son wielded the authority which a confiding father entrusted in him for the unworthy purpose of defeating the bequest made by the will of his father to the step-mother. It was the exercise of an authority by the attorney in fact that was neither expressly nor impliedly conferred on him by his constituent. When his father declined to direct him to distribute the money among his children, he immediately, without consulting the former, appropriated it to his own use so as to defeat the settled purpose of his father as indicated in his will. Four of the sons, including the attorney in fact and the executor, it seems from the evidence,

were acting in concert to defeat the intention of the father as disclosed by his will. It may be inferred that they were aware of the provisions of the will and the probable early death of the father, and in order to accomplish their nefarious design made the hasty disposition and appropriation of their father's money just stated.

The circumstances disclosed by the evidence clearly justify the inference that there was collusion between the attorney in fact and the executor, if not between them and at least two of the other brothers to compass the defeat of the stepmother's rights under the will of the father. From all the facts and circumstances in evidence the conclusion is irresistible that the executor was a party to the scheme to thwart and frustrate the intention of the father to provide by will for his widow, and that he well knew of the wrongful appropriation of the father's money by the attorney in fact. The executor when he qualified and took charge of his father's estate under the will was well apprised of the fact of the conversion of his father's money in his lifetime and of the liability of the attorney in fact therefor. Darling v. Potts, 118 Mo. 506; Butts v. Phelps, 79 Mo. 302; Rechtscherd v. Bank, 47 Mo. 181; Switzer v. Connett, 11 Mo. 88. It was the duty of the executor to have inventoried the claim of his father's estate against the attorney in fact and to have proceeded to collect the same by suit or otherwise. R. S. 1899, secs. 68, 69, 70, 96.

When ths action was begun nearly three years had elapsed since he took charge of the estate and there is no pretense that he had taken a single step towards recovering the money which had been wrongfully coverted by the attorney in fact during the life of the testator. This constituted the grossest mismanagement of the estate. The relation of the executor to the collusive scheme rendered him an

unsuitable person to execute the trust reposed in him by the will. The purpose of the executor, with the other children of the testator referred to, was to keep the stepmother out of the one thousand dollars provided for her in the will and it was no doubt to subserve this purpose that the executor neglected to sue for the wrongful conversion or to collect the money belonging to the estate. It was a part of the scheme to so manage the money which was collected by the attorney in fact as to keep it outside of the jurisdiction and control of the probate court, and to permit the executor to continue in his office would be but to lend assistance to him in carrying out the fraudulent scheme which was concocted by himself and the others.

Nor can we see that the acceptance by the executor of the notes taken by the attorney in fact for part of the money collected by him for the testator operates as a discharge of the liability of the attorney in fact to the testator or to his executor since the same was but part of the collusive and fraudulent scheme already referred to and bound no one; or at least it did not bind those interested in the estate and not parties thereto. It is clear that the interest of the estate of the testator imperatively requires the removal of the present executor and the appointment of some one in his stead who will faithfully administer the estate. A trust of this kind is not to be perverted and abused in any such way. The plaintiff has been subjected to much delay and ill usage by the executor. No court should give countenance to such behavior in any one acting in the capacity of executor, trustee and the like.

The plaintiff was entitled to have a consideration of her case on the theory of the instruction hereinbefore set forth. It seems to us that upon the undisputed evidence the defendant's letters as executor of said estate should be re-

voked.   A clear case of waste and msmanagement of the estate was made out against him.   He is shown to be entirely unfit and unsuited to discharge the duties of the trust imposed upon him by the will.

The judgment of the circuit court will be reversed and the ·cause remanded.   All concur. ·