383 S.W.2d 735 (1964)
In re ESTATE of R. Hadley PATTERSON, Deceased.
Willie Lee GOLDING, Appellant,
v.
Jack A. POWELL, Administrator Ad Litem, Respondent.
No. 50585.
Supreme Court of Missouri, Division No. 2.
November 9, 1964.
Wear & Wear, William A. Wear, Springfield, for appellant.
Wayne T. Walker, Springfield, Daniel, Clampett, Ellis, Rittershouse & Dalton, B. H. Clampett, Springfield, for respondent.
STOCKARD, Commissioner.
This is an appeal by Willie Lee Golding from the judgment of the trial court denying her claim that she was the owner of a bank account and of an account in each of two savings and loan associations. The sum of the three accounts exceeds $17,000.
R. Hadley Patterson was the sole owner of the three accounts. He was in a rest home and physically incapable of taking care of his business affairs. Willie Lee Golding, appellant herein, looked after all his business interests, paid his bills by using his money, and took care of him generally. About three months prior to the death of Hadley, he and appellant executed and signed printed deposit agreements purporting to transfer each account from the sole ownership of Hadley to a joint ownership, with right of survival, of Hadley and appellant. All the money in each joint account came from the accounts previously owned alone by Hadley, or from money that belonged to him.
After the death of Hadley, appellant claimed that she was the sole owner of the three accounts. The trial court ruled in her *736 favor, relying primarily on Commerce Trust Co. v. Watts, 360 Mo. 971, 231 S.W.2d 817. On appeal to this court that judgment was reversed. In re Patterson's Estate, Mo., 348 S.W.2d 6. This court held that at the time the three agreements for joint accounts were executed and the accounts opened, appellant's relationship to Hadley was that of trust and confidence, that the transfer of the accounts as the result of acts by appellant from the sole ownership of Hadley to a joint ownership was in the nature of a gift to appellant, and that pursuant to the rule announced in In re Kaimann's Estate, 360 Mo. 544, 229 S.W.2d 527, the gift was "presumptively void" and appellant had the burden to rebut this presumption by showing the absolute fairness and validity of the gift, which included the intent on the part of Hadley to make a gift, and that the transaction was entirely free from the taint of undue influence. The cause was remanded so that appellant could be afforded the opportunity to develop the facts. The parties stipulated that all the evidence at the first trial, subject to the objections made, should be considered on the second trial together with the additional evidence offered on retrial.
In the memorandum of the trial court it was stated that on the previous appeal we held that "the execution of the joint signature cards to the money in controversy amounted to a gift to Mrs. Golding, and that there is a legal presumption that such gift is invalid as being prompted by undue influence when received by one who occupies such a position of trust and confidence." (Emphasis added). The trial court then held that "the additional evidence does not overcome this presumption and therefore the judgment must be for the defendant." It was further stated in the memorandum that "the evidence clearly showed that the execution of the joint signature card `was undoubtedly done under a mistaken apprehension of the legal effect thereof,' * * * [and] the question could and should have been decided on the basis of mutual mistake rather than a presumption of invalidity, * * *." We think this interpretation of our previous ruling is too restricted. As previously noted, we held that there was a presumption of invalidity, but we did not hold that the presumption was limited to undue influence. On the contrary, we held that because of the presumption the burden was on the appellant to show the absolute fairness of the transaction, the validity of the gift (which would include the issue of intent), and that it was free from the taint of undue influence. However, on this appeal we are concerned with whether the trial court reached the correct result in view of all the evidence, regardless of the reason given. This determination requires a detailed statement of the evidence.
Hadley was the son of Roscoe Patterson and Ada Patterson. He was a semi-invalid as a boy and never progressed beyond a few months in high school. As an adult he was not able to work. In 1944, when about thirty-seven years of age, he had an attack of some kind, perhaps meningitis, and thereafter was not able to walk without assistance. When his father was living, Hadley was dependent upon him, and after his father's death in 1953 he was dependent upon his mother. When his mother became an invalid, his first cousin (on his father's side), Kirby Patterson, took over the responsibility of looking after him and his mother, and he handled their property and financial affairs. At the time of the death of Hadley's father there were two savings and loan accounts, each carried as joint accounts in the name of Roscoe C. Patterson and Ada Patterson. Thereafter, they were changed, at the suggestion of Kirby, to joint accounts in the name of Ada Patterson and R. Hadley Patterson. In 1956 a joint bank account at the Union National Bank was opened in the name of Ada Patterson and R. Hadley Patterson. In October 1957, Kirby accepted employment with the Department of Justice in Washington, D. C., and appellant, also a first cousin of Hadley (on his mother's side), took over the responsibility of looking after him. Mrs. Patterson died in the early part of *737 November, 1957, and shortly thereafter, at the request of appellant, Kirby delivered to appellant the passbooks to the three accounts, all being in the name of Hadley and his mother but the sole property of Hadley because his mother was then deceased.
On December 10, 1957, the account in the Union National Bank and the account in Guaranty Federal Savings and Loan Association were changed to what purported to be joint accounts in the name of Hadley and appellant. In each case appellant presented to the bank or savings and loan association a regular printed form, each being signed by Hadley and by appellant, purporting to be an agreement that the accounts be held by Hadley and appellant as joint tenants with right of survivorship. What was said by appellant in arranging for the joint account at the Union National Bank is not disclosed in the record. However, the teller at the savings and loan association testified that appellant came to the office and "explained that R. Hadley Patterson was unable to come to make the withdrawals that he needed for medical expenses, and that she would like to take care of it for him." Appellant asked the teller "how our record would need to behow we could arrange it, so that she could take care of this for him," and the teller told her "the account would have to be transferred, and have her name on it before we could make any withdrawals to her." The teller further testified that the appellant "took this book back and obtained the signature of R. Hadley Patterson, and that authorized us to journal this account to the present account, in the name of R. Hadley Patterson and Mrs. Harold F. Golding." On the "joint ownership signature card" the teller typed the following: "Patterson is [in?] rest home, and Mrs. Golding taking care of his business."
The account in the Safety Federal Savings and Loan Association was changed to a joint account in the name of Hadley and appellant on January 28, 1958. The assistant-treasurer testified that when appellant came to the office the first time "she said she would like to take care of some business for Mr. Patterson, that he was unable to come to the office." Appellant had the passbook with her, and the assistant-treasurer "told her that in order for her to handle it, her name would have to be on the account," and she made out the "necessary papers" for Hadley to sign to "re-issue the account" and gave them to appellant who returned them a few days later signed by appellant and Hadley. Appellant gave no instructions on how she wanted the account "re-issued," but left the matter entirely up to the assistant-treasurer who made no contact with Hadley.
On February 1, 1958, Hadley executed a will after discussing the matter "at some length" on two occasions with his attorney. Appellant was present during the first discussion but she made no effort to tell him what he should or should not do. By the provisions of the will his property was divided into fifteen parts, and appellant was one of the named beneficiaries. However, without the three accounts above mentioned his total assets consisted of his "walker," a television set and four or five items of personal property not subject to being divided into fifteen parts. It appears, however, that at some subsequent time Hadley voided this will, and at one place on the cover it was marked "void as of 1/24/58," which date was prior to its execution.
Following the death of Hadley, appellant was appointed administratrix of his estate, and as such she listed the balance of each of the three accounts in the inventory as an asset of the estate. In addition, she caused the account in the Union National Bank to be transferred to herself as administratrix of the estate of Hadley. In July 1958 she showed the passbooks to the attorney for the estate who then learned for the first time that the accounts were listed as jointly owned by Hadley and appellant, and it was following this that appellant filed her petition to determine the ownership of the accounts and alleged that they had been included in the inventory "through mistake." She testified that she listed them in the inventory because the attorney for the estate *738 told her "to list everything that I had there pertaining to Hadley, and that's what I did. I listed everything."
At the rehearing appellant's husband testified that when Hadley was at a rest home prior to the transfer of the accounts to include appellant as a joint owner, he was present during conversations between Hadley and appellant. He stated that "there has been different times when Hadley has talked to Mrs. Golding and myself that he wanted these accounts in her and his name. One reason was in case any checks had to be signed, why, that she would be able to sign them, and also, at other times we were talking, he wanted her to have what he had left because of the fact he has said many different times that she was the only one that has really helped him," but he said that he never heard Hadley tell appellant that he was giving her the money in the accounts. He also testified that appellant took care of Hadley, took him riding, bought clothing for him, and "went over and took care of them [Hadley and his mother] for a month when they were in the Seville Hotel." However, he admitted that she was paid for her services in caring for Hadley and his mother.
Appellant also testified at the rehearing. After explaining why she listed the accounts in the inventory, as above set out, she said that after Hadley's mother died she saw him "just about every day," and that she performed services for him in taking him out in the car, to a drive-in to eat and to shows, and that she "even washed his clothes, sometimes, not always, but I tried to keep him looking nice." After Hadley's death, appellant wrote a letter to Kirby and in it she said, "I am going to ask for wages which everyone says I justly deserve. You know and I know it was quite a task, but someone had to do it and you know I didn't leave anything undone. I would appreciate it if you would write back telling how you feel about this, and if I don't have a just claim."
Appellant makes but a single point on this appeal, that is, that the trial court erred in holding that the additional evidence introduced by appellant did not overcome the presumption that the gift "was invalid as being prompted by undue influence." She relies on cases which she contends hold that in the absence of any evidence the presumption rules the issue, but when substantial evidence to rebut the presumption is presented it then "will lose all force and vanish when the facts appear in the evidence." Cited are Bridle Trail Association v. O'Shanick, Mo.App., 290 S. W.2d 401; Stack v. General Baking Company, 283 Mo. 396, 223 S.W. 89; Mackowik v. Kansas City, St. Joseph and Council Bluffs Railroad Company, 196 Mo. 550, 94 S.W. 256; State v. Martin, 364 Mo. 258, 260 S.W.2d 536. The correct statement of the rule is set forth in Loehr v. Starke, 332 Mo. 131, 56 S.W.2d 772, as follows: "The presumption and fact, or inference, go hand in hand and really are the same thing. Hence, the presumption, with its underlying facts or inferences, once being in the case, never does or can disappear but raises an issue for the jury," or for the trier of fact when not a jury tried case. See also Cuthbert v. Heidsieck, Mo., 364 S.W.2d 583, a suit to set aside a gift on the basis of undue influence, where it was stated: "We have said that a gift or a transfer of assets to one in a fiduciary relationship with the donor or grantor, * * * is presumed to be by reason of undue influence exercised upon the donor or grantor in those instances where the evidence permits of the inference that the beneficiary of said gift or transfer was active in causing or assisting in causing the execution thereof. * * *; that when supported by probative evidence said presumption makes a prima facie case which does not disappear upon the introduction of rebutting testimony * * *, and that such proof casts the burden of going forward with the evidence on the donee or grantee to show that the gift was fair and equitable * * *." See also Nelson v. Hammett, Mo., 189 S.W. *739 2d 238, 243. We necessarily conclude that in view of the presumption of invalidity of the gift from Hadley to appellant, the burden was on appellant to go forward with the evidence to establish the validity of the gift. When such evidence was presented, the issue of validity became a mixed question of law and fact, with the fact issues to be determined from all the evidence by the trier of fact, which in this case was the court.
The trial court stated in its memorandum that it determined that the evidence did not overcome the presumption that the gift was invalid "as being prompted by undue influence," but it further added that there was not the slightest evidence of any actual fraud, deception, or undue influence on appellant's part. We are in complete agreement with this latter statement. We need not determine whether the conclusion of the trial court that the presumption was not overcome was warranted in view of its findings concerning the absence of evidence as to fraud, deception and undue influence. The trial court also indicated in its memorandum that it found as a fact that the execution of the agreements purporting to establish joint accounts "was undoubtedly done under a mistaken apprehension of the legal effect thereof." Not only do we agree with this finding of the court, who was in a favorable position to judge the credibility and evaluate the testimony of the witnesses, but from an independent evaluation of the evidence we conclude that there was no intention on the part of either Hadley or appellant that by the execution of the agreements and the changing of the accounts there was to have been a present gift to appellant of joint ownership with right of survivorship in the accounts. See generally 10 Am.Jur.2d Banks § 387, and the cases there cited to the effect that when one changes an account from his name to his name and another simply for convenience and without the intention to pass an interest in the account to the other person, such other person acquires no interest in the account and, of course, has no right to survivorship. Under the circumstances the burden was on appellant to produce evidence that such intention did exist on the part of Hadley to make a gift to appellant of joint ownership with right of survivorship in the accounts, that is, as said in the opinion on the first appeal, appellant had the burden "to rebut this [presumption of invalidity] by showing the * * * validity [including intent] of the gift," and we conclude that she has not done so. We shall now set forth our reasons for this conclusion.
The evidence clearly shows that at no time until several months after the death of Hadley did appellant consider or believe that she acquired title to or an interest in the accounts. If so, she would not have listed each account as an asset of the estate, and she would not have had the bank account transferred to her as administratrix of Hadley's estate. In addition, as to the two accounts with the savings and loan associations, the only conclusion to be drawn is that appellant arranged for the joint accounts as a means whereby she could withdraw funds belonging to Hadley to pay his bills and expenses. It might be said that appellant's additional evidence upon retrial indicates that Hadley may have intended a gift of an interest in the accounts in return for the services to Hadley and his mother. However, appellant was paid for her services to Hadley's mother, and the transfer of the accounts was made very shortly after her death and before any substantial services had or could have been rendered to Hadley alone. If there had been an agreement or understanding between Hadley and appellant that a gift was then being made for the rendering of future services, appellant would have known of such agreement, and in knowing of it she would have been aware of her ownership of or interest in the accounts and she would not have listed them as assets of the estate. In addition, she would have considered herself paid for the services rendered and she would not have written Kirby that she intended to file a claim against *740 Hadley's estate "for wages." Also, if there had been an agreement that the accounts were to be transferred to her for payment of past and future services, which agreement appellant would have known about, then appellant also would have known that the accounts would not have been assets of the estate and there would have been no purpose in making a claim for wages against an estate in which there practically were no assets. We think that appellant's actions and conduct subsequent to Hadley's death compel the conclusion that there was no agreement between Hadley and appellant that at the time of the transfer of the accounts appellant was to receive a present ownership therein. While it is admitted that appellant did not have legal training, we cannot assume that one who considered herself sufficiently competent in business matters to handle the business affairs of another would not understand the effect of such a transfer of the ownership of the accounts if the transfer had been made or brought about by such an agreement between her and Hadley. One further matter has some bearing on the intent of Hadley. After he signed the joint ownership agreements he executed a will after lengthy discussions with counsel concerning his property and in which he did not disclose that the accounts had been changed to joint ownership with appellant. The terms of the will were inconsistent with an intent on his part at the time of the transfer of the three accounts to create a joint ownership with appellant with right of survivorship. It is true that he later voided the will, but his later action does not affect the inference that at the time of execution thereof he apparently then believed he retained the right of disposition of the accounts by will.
When we consider all the evidence in this case, and take into consideration that the trial court by reason of personal observation of the witnesses was in a better position than we to evaluate the credibility of the witnesses, we conclude that the trial court correctly found that by the execution of the agreement Hadley and appellant were mistaken as to the legal effect thereof, and that neither Hadley nor appellant intended that a joint ownership of the accounts be created with right of survivor. Instead, the transfer was made solely for convenience in handling his business affairs.
The judgment is affirmed.
BARRETT and PRITCHARD, CC., concur.
PER CURIAM.
The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.
All of the Judges concur.