**MERCANTILE TRUST COMPANY, N. A., Executor of the Estate of Edmund Louis Mandle, Plaintiff-Respondent,**

v.

**Judith C. HARPER, Paine, Webber, Jackson & Curtis, Inc., et al., Defendants-Appellants.**

Nos. 42312, 42336.

Missouri Court of Appeals,
Eastern District,
Division 2.

Aug. 4, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 21, 1981.

Application to Transfer Denied
Nov. 10, 1981.

William J. O'Herin, St. Louis, Sandford Miller, Clayton, for defendants-appellants.

Richard Stout, Chesterfield, for plaintiff-respondent.

GUNN, Judge.

Plaintiff Mercantile Trust Company, executor of the estate of Edmund L. Mandle, deceased, filed a petition to determine title to property in the probate court of St. Louis County; the probate court certified the matter to the circuit court. The petition named as defendants Paine, Webber, Jackson & Curtis, Inc. (Paine, Webber), Judith C. Henry, now Judith C. Harper (Judith), Robert H. Harper, Judith's husband (Robert), and J & R Transport, Ltd. At issue were the proceeds (some $80,000) from the sale of stocks which Edmund Mandle had owned in his name until his stepdaughter, Judith, holder of a general power of attorney from Edmund Mandle, sold the stocks to Paine, Webber. In turn, Paine, Webber established a joint account with right of survivorship, in the names of Judith C. Henry and Edmund L. Mandle and placed

the proceeds from the sale of stocks in the account. The trial court sustained defendant J & R Transport's motion for a directed verdict. The jury returned a verdict in plaintiff's favor in the amount of $80,000, and judgment was entered against the remaining three defendants. The liability of Paine, Webber is premised on breach of its fiduciary duty to Mr. Mandle, while Judith's liability is premised on conversion of assets belonging to Mr. Mandle and breach of her fiduciary duty to him. Robert's liability is based on his status as donee of property obtained in an unlawful manner.

The cynosure of this appeal is the general power of attorney and whether it authorized the disposal of the stock certificates in the manner accomplished. We hold that it did not and affirm the judgment of the jury to the same effect.

On June 12, 1975, Edmund Mandle executed a general power of attorney designating and appointing his stepdaughter, Judith, as his attorney in fact.[1] We find no hint of undue influence or impropriety in connection with the execution of the power of attorney. The language of the power of attorney was broad providing that Judith, as attorney, could "perform any act . . . that I [Edmund Mandle] now have, or may hereafter acquire the legal right . . . to . . . perform, in connection with . . . any . . . item, transaction . . . or matter whatsoever," and to "perform . . . every act . . . proper, or necessary to be done, in the exercise of the rights and powers herein granted, as fully to all intents and purposes as I might or could do if personally present." At the time, Mr. Mandle and Judith maintained a joint checking account with Mercantile Trust Co. out of which she paid bills for her stepfather. A joint safety deposit box contained Mr. Mandle's stock certificates.

Beset with a terminal illness Mr. Mandle entered a St. Louis hospital on September 17, 1975. Two days later, Judith presented the power of attorney to White Weld & Company, a stock brokerage firm handling Mr. Mandle's account, and sought delivery to her of the cash and securities in the account. Her request was refused. The following day, September 20, 1975, Mr. Mandle executed a letter addressed to White Weld directing that his account be deposited in the joint account with Judith at Mercantile Trust Co. After telephoning Mr. Mandle, the broker persisted in refusing to deliver the account to Judith.[2]

Later in September, 1975, Judith removed Mr. Mandle's stock certificates from the joint safe deposit box at Mercantile. Taking the stock and power of attorney to Paine, Webber, Judith requested that the stock be sold and that a joint account with right of survivorship be established with her and Mr. Mandle and the proceeds placed in the account. Paine, Webber complied with the request inquiring only with Mercantile to determine the "financial and credit responsibility" of Judith and Mr. Mandle.

The following sequence of events then occurred. On October 7, 1975, Paine, Webber sold the stock and placed the proceeds of approximately $80,000 in a joint account for Judith and Mr. Mandle. On October 27, 1975, $1,411.83 was withdrawn from the account in the form of a check payable to Mr. Mandle and Judith. Mr. Mandle died on November 10, and Paine, Webber distributed the remainder of the stock proceeds to Judith as survivor of the joint account.[3] From this account, $41,500 was used to purchase a truck tractor in the name of Judith and her husband (Robert H. Harper), doing business as J & R Trucking; $21,221.99 was used to pay some of Judith's debts.

1. The relationship between Mr. Mandle and his stepdaughter, Judith, was intimate. He had married Judith's mother when Judith was a baby and raised her as his natural daughter.

2. Depositional testimony of the broker admitted into evidence under objection was to the effect that Mr. Mandle had been contacted on

September 19, 1975 and denied executing the power of attorney.

3. By his will, Mr. Mandle distributed his estate as follows: A total of $12,030 to his brothers, nieces and nephews; $20,000 in trust during their minority to Judith's two children, with Judith as trustee; the residue to Judith.

Mercantile Trust Co., as executor of Mr. Mandle's estate, brought suit against Judith and her husband Robert Harper alleging that they had acquired and converted Mr. Mandle's property pursuant to a power of attorney which was totally void, and against Paine, Webber, alleging that it, knowing Judith to be acting in a fiduciary capacity, had failed to determine whether the power of attorney was proper muniment of authority for the purpose for which it was utilized.

The central issue to a denouement of this case is whether the general power of attorney executed by Mr. Mandle and given to Judith was sufficient investment of authority for a joint account to be opened by Paine, Webber at Judith's behest. The jury specifically found this issue against both Paine, Webber and Judith. Despite a vigorous defense waged by Paine, Webber aimed at casting off the mantle of liability, we conclude that as a matter of law the power of attorney provided no authority for the joint account, thereby affirming the judgment.

■■■ First, some basic precepts: the relationship between a stock broker and his customer is that of agent and principal. Owing a fiduciary duty to the customer, the broker has an "obligation to keep the customer fully informed of all facts pertinent to transactions in which the broker is representing the principal, to make full disclosure of all facts which materially affect the subject matter of the agency, and to exercise reasonable care and diligence in the performance of his duties." *Roth v. Roth*, 571 S.W.2d 659, 668 (Mo.App.1978).

■■■ The broker's duty to notify a customer of an action potentially threatening to the customer's interest arises when the broker has "actual or constructive notice of any fact or circumstance which would have put a reasonably careful and diligent fiduciary on notice or suspicion" that a conversion of the customer's assets is intended. *Leuzinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 396 S.W.2d 570, 577 (Mo. banc 1965).

*Trenton Trust Co. v. Western Surety Co.*, 599 S.W.2d 481 (Mo. banc 1980), establishes that the creation of a joint account in the names of the principal and his agent with funds derived entirely from the principal constitutes a breach of the agent's fiduciary duty and that the depositary bank (or, by analogy, the brokerage firm) may be liable for a loss from an act inconsistent with the true owner's interest in the property.

Overriding these precepts and the question of whether Paine, Webber knew or should have known (and it is apparent under the law that it should have known) that a conversion of Mr. Mandle's assets could have occurred through the establishment of the joint account is the fact that the purported power of attorney did not create any costume of authority for the establishment of the joint account.

■■■ Well established rules of interpretation of powers of attorney dictate that broad, all-encompassing grants of power to the agent must be discounted. Restatement (Second) of Agency, § 34, Comment h (1958). Potentially hazardous powers, such as the power to borrow money on behalf of the principal, cannot be inferred from the power of attorney; it must be reasonably clear that the principal intended to grant such power. *Id.* Language in a power of attorney that apparently grants broad power to convey the principal's property, such as the power to convey "as sufficiently as [the principal] could do personally," is deemed to be mere "window dressing" and must be disregarded. W. Seavey, Handbook of the Law of Agency § 21 (1964).

■■■ Court decisions similarly strictly construe general powers of attorney. Over a century ago the United States Supreme Court held that a broad power of attorney to "transact all matter of business" did not empower the agent to sell the principal's stock. *Hodge v. Combs*, 66 U.S. (1 Black) 192, 17 L.Ed. 157 (1861). It has also been held that an agent holding a broad power of attorney lacks the power to make a gift of the principal's property, unless such power is expressly conferred or arises as a necessary implication from the conferred powers;

that the agent must be circumspect with regard to the powers created—or the lack of them. *Von Wedel v. McGrath*, 180 F.2d 716, 718–19 (3rd Cir. 1950), *cert. denied*, 340 U.S. 816, 71 S.Ct. 45, 95 L.Ed. 600 (1950); *Hodges v. Surratt*, 366 So.2d 768, 773–74 (Fla.App.1978); Annot., 73 A.L.R. 884 (1931). Missouri courts also insist on strict construction of powers of attorney and refuse to infer broad powers from instruments that inadequately describe the property with which the agent is to deal. *Prior v. Hager*, 440 S.W.2d 167, 173–74 (Mo.App. 1969). *See Haynes v. Carpenter*, 86 Mo. App. 30, 37 (1900) (very broad powers of attorney did not authorize agent to re-loan principal's money after it had been collected).

Prior Missouri statutes apparently required a specific power of attorney to empower an agent to transfer the principal's stock. Title to shares of stock could be transferred by delivery of their representative certificates along with the power of attorney to sell, assign or transfer the certificates or shares; the power of attorney must have been signed by the person who appeared by the certificates to own the shares. § 403.050, subd. 1(2) RSMo 1959. Missouri's adoption of the Uniform Commercial Code repealed and replaced § 403.-050 with § 400.8–309 RSMo 1969, requiring delivery of both the security and a separate document indorsed by the owner of the security in order to effect the owner's indorsement. Although § 400.8–309 does not specify the content of the appropriate "separate document," comments to the statute indicate that former § 403.050 was rephrased and carried into the new statute.

It can reasonably be assumed, therefore, that to sell or transfer the owner/principal's securities, a power of attorney must state explicitly its subject matter and purpose.

Associated with a well established brokerage house, the Paine, Webber stock brokers in this case were no callow fellows befuddled by joint accounts and powers of attorney and the authority (or lack of it) created thereby. The power of attorney, without more, should have been a tocsin to them to be chary in the handling of Mr. Mandle's affairs. Under the indited principles of law, we find that the power of attorney did not create authority for Paine, Webber to establish a joint account in the names of Mr. Mandle and Judith and to place the proceeds from Mr. Mandle's stock in the account. Consequently, it must bear the consequences for its acts. Having so found, we need not venture nor dwell in depth on the points of appeal raised by Paine, Webber, particularly complaints as to the instructions submitting the issue of whether Judith had authority to establish a joint account.

Turning now to the case against Judith, we note that her first complaint concerns the verdict directing instructions.[4] She contends that the instructions require her to bear the burden of proving that she acted with authority rather than requiring Mercantile to prove her actions were without authority. Aside from our finding that the broad power of attorney actually gave no authority for the joint account, *Matter of Estate of Stickler*, 551 S.W.2d 944 (Mo.App. 1977) [quoting *O'Day v. Annex Realty Co.*, 236 S.W. 22, 24 (Mo.1921)], places the bur-

---

4. The instructions complained of directed the jury to find for Mercantile and against Judith if it believed the following:

   First, Judith Harper delivered stock certificates belonging to Edmund Mandle to Paine, Webber, Jackson and Curtis; and

   Second, said stocks were sold; and,

   Third, Judith Harper received the sale proceeds thereof; and,

   Fourth, that Judith Harper failed to deliver sale proceeds to Edmund Mandle during his lifetime, or to the Executor of his estate after his death;

   unless you believe plaintiff is not entitled to recover by reason of Instruction No. 3. Instruction number three directed a verdict for Judith and against plaintiff if the jury believed:

   First, Judith Harper sold stock certificates belonging to Edmund Mandle and placed the proceeds in a joint account with the right of survivorship; and

   Second, Judith Harper was authorized by Edmund Mandle to do so.

den on the agent (Judith) to prove proper handling of the principal's assets:

> It is the general rule that the agent is bound to account to his principal for all money and property which may come into his hands by virtue of the agency. And, further, when the principal has shown the existence of such a relation and the receipt of money or property by the agent, the burden of showing that he made a proper disposition of it rests upon the agent.

*Id.* at 951.

Attempting to distinguish the instant case from *Stickler*, Judith notes that *Stickler* involved a proceeding to discover assets under § 473.340 RSMo 1969. The defendant-agent, who held a general power of attorney, sold the principal's property prior to her death and placed the proceeds in the agent's personal bank account. The agent's authority to sell the principal's property was not at issue; rather, the issue was whether the agent converted to her own use the proceeds from the sale. We believe that these distinctions, while valid, do not result in the nonapplicability of the general rule that an agent has the burden of proving that he properly disposed of the principal's property after receiving it.[5] Mercantile established the fiduciary relationship between Mandle and Judith [*see Godsy v. Godsy*, 504 S.W.2d 209 (Mo.App. 1973), holding that possession of a general power of attorney is a factor in finding a fiduciary relationship], and that Judith, the agent, received money from the sale of Mr. Mandle's property and placed it in a joint account. The trial court did not err in then shifting the burden on Judith to show that her treatment of Mandle's property was proper and that she was authorized to dispose of it as she did.

The verdict director against Robert Harper, Judith's husband, directs the jury to find against him if he benefitted from the misappropriated funds when he knew or should have known the source of the funds. There was no error in that instruction. Where property has been obtained through breach of a fiduciary duty and a donee receives the property with knowledge of the breach, the donee is personally liable to restore the property or its value to the equitable owner. *Cross v. Cross*, 362 Mo. 1098, 1101–02, 246 S.W.2d 801, 803–04 (1952). Even an innocent donee of property obtained through breach of fiduciary duty is liable to the extent of his unjust enrichment at the time he receives notice of another's equitable ownership of the property. *Page v. Joplin National Bank & Trust Co.*, 363 Mo. 1008, 1014, 255 S.W.2d 821, 825 (1953); *Cross v. Cross*, 362 Mo. at 1101, 246 S.W.2d at 803. The evidence revealed that Judith received a check in the amount of $41,500.00 from her joint account with Mandle shortly after Mandle's death and that this sum was used to purchase a tractor in the name of Robert H. Harper and Judith C. Henry, d/b/a J & R Trucking. It was within the province of the jury to conclude that Robert knew or should have known the source of these funds from which he clearly benefitted. Even if Robert were totally unaware of the source of the funds at the time he benefitted from them, current notification that the funds were misappropriated mandates disgorgement by him to the extent of his unjust enrichment—$41,500.00. Therefore, the jury's assessment of plaintiff's damages at $80,000.00 should be interpreted to hold Robert liable for an amount not to exceed the sum by which he clearly benefitted.[6]

5. Had Judith contended that placement of the proceeds from the sale of the stock in the joint account constituted a gift to her from Mandle, she would have had the burden of proving a valid gift by clear, cogent and convincing proof. *Matter of Estate of Passman*, 537 S.W.2d 380, 384 (Mo. banc 1976); *In re Patterson's Estate*, 383 S.W.2d 735, 738–39 (Mo.1964); *Skidmore v. Back*, 512 S.W.2d 223, 229 (Mo.App.1974);

*In re Estate of Hitchcock*, 483 S.W.2d 617, 622–24 (Mo.App.1972); M.A.I. 3.04.

6. Plaintiff contends that Robert also benefitted from the $21,221.99 that was withdrawn from the joint account and applied to payment of Judith's debts. Evidence indicates, however, that the debts were solely in the name of Judith Harper.

The next item of complaint concerns the admission of certain depositional testimony of a witness from White Weld & Co. Defendants urge that there was an insufficient showing under Rule 57.07(a)(3) of the unavailability of the witness whose testimony was admitted by deposition. Defendants' argument in this regard has worth, for the excuse for the witness' inability to appear was most flimsy.[7] But we find that the deposition complained of merely constituted cumulative evidence and did not materially affect the merits of the case. Hence, admission of the evidence was insufficient cause for reversal. *Fallert Tool & Engineering Co. v. McClain*, 579 S.W.2d 751, 759 (Mo.App.1979); *Bolivar Farmers Exchange v. Eagon*, 467 S.W.2d 95, 99 (Mo. App.1971).

Nor was there error in admitting other depositional testimony about which defendants complained as not having probative value by allegedly having a prejudicial impact against them. Depositions of White Weld & Co. employees who had handled Mr. Mandle's account were admitted over objection to show that they had rejected the power of attorney given them by Judith as not providing authority to open the joint account and that they had personally contacted Mr. Mandle who specifically denied the power of attorney. Evidence is admissible if it tends to prove or disprove a fact in issue. *Charles F. Curry & Co. v. Hedrick*, 378 S.W.2d 522, 536 (Mo.1964); *State v. Crane*, 559 S.W.2d 294, 297 (Mo.App.1977). The testimony was relevant to establish that Judith's conduct was incongruent with Mr. Mandle's wants and could disprove the issue of her authority; it could also indicate that she was premonished of her lack of authority to open a joint account. It is also relevant to the issue of whether, under the circumstances, the ordinarily prudent and careful broker would suspect something amiss and have a duty to notify the principal. We find no abuse of the trial court's broad discretion in ruling the evidence to be relevant and admissible. *State ex rel. State Highway Commission v. Drisko*, 537 S.W.2d 645, 649 (Mo.App.1976).

Next, Paine, Webber alleges trial court error in overruling its motion to dismiss Mercantile's amended petition prior to trial as it failed to allege any "interest" of Paine, Webber in Mandle's assets as required by § 473.340, RSMo 1978, and failure of proximate cause for any loss to Mr. Mandle. We find no error here. In its amended petition Mercantile premised its action against Paine, Webber and Judith on breach of fiduciary duty to Mandle. Since it was not a petition to discover assets under § 473.340, we need not address the merits of Paine, Webber's contention. Further, in considering a petition on a motion to dismiss a court must liberally construe the petition and give plaintiff the benefit of all inferences that can be fairly deduced from the facts stated. *Kirkwood-Easton Tire Co. v. St. Louis County*, 568 S.W.2d 267, 268–69 (Mo. banc 1978); *Scheibel v. Hillis*, 531 S.W.2d 285, 289 (Mo. banc 1976), *appeal after remand*, 570 S.W.2d 724 (Mo. App.1978). Paine, Webber's causation of Mercantile's injury can be readily inferred from the averments that Mr. Mandle's stock was sold and the proceeds placed in the joint account for Judith's disposal, thereby depleting the estate.

Finally, Paine, Webber is correct that Mercantile's closing argument was improper for characterizing that it was fighting for the right of Mr. Mandle's grandchildren, as such argument was unsupported by the evidence. But under the circumstances of this case we do not believe that trial flaw constitutes reversible error. *Schmid v. Langenberg*, 526 S.W.2d 940, 947 (Mo.App. 1975); *Wilkins v. Cash Register Service Co.*, 518 S.W.2d 736, 746 (Mo.App.1975).

Judgment affirmed.

PUDLOWSKI, P. J., and DOWD, JJ., concur.

---

7. In a letter dated more than one month before the trial, the witness, who resided in St. Louis County, indicated that he would be "out of St. Louis" at the time of the trial. No attempt was made to secure the presence of the witness by subpoena, nor effort to show that the witness would be absent from St. Louis County.