591

IN THE UNITED STATES DISTRICT COURT

FOR THE

NORTHERN MARIANA ISLANDS

APPELLATE DIVISION

CYNTHIA PUA MATAGOLAI,              )
individually and as Guardian        )     DCA NO. 87-9013
ad Litem for JASPER P. MATAGOLAI,   )     CTC NO. 85-409
                                    )
              Plaintiff,            )
                                    )
       vs.                          )     OPINION
                                    )
CARIDAD M. PANGELINAN,              )
ASSOCIATED INSURANCE UNDERWRITER    )
OF THE PACIFIC, INC.,               )
a corporation, LINCOLN LIFE         )
INSURANCE COMPANY, a corporation,   )
RUFINA Q. MATAGOLAI, DOES I         )
THROUGH X,                          )
              Defendants.           )
_____)

Attorney for Defendants/Appellants
Caridad Pangelinan and Rufina
Matagolai:                          Jay H. Sorenson, Esq.
                                    O'Connor & Sorenson
                                    2d Floor, Nauru Bldg.
                                    P.O. Box 1969
                                    Saipan, MP 96950
                                    Telephone: (670) 234-5684
Attorney for Plaintiff/Appellee:    WILLIAM S. MOUNT, Esq.
                                    Carlsmith, Wichman, Case
                                         Mukai & Ichiki
                                    P.O. Box 241 CHRB
                                    Saipan, MP 96950
                                    Telephone: (670) 322-3455

Before:    LAURETA and KING,* District Judges, and Dela
           Cruz,** Judge.

---

*      Honorable Samuel P, King, Senior U.S. District Judge
       for the District of Hawaii, sitting by designation.

**     Honorable Jose Dela Cruz, Judge, District Court for
       the Northern Mariana Islands, sitting by designation.

## I. Procedural Background

On August 30, 1985 plaintiff filed her complaint for declaratory and injunctive relief and damages on her own behalf and as guardian *ad* *litem* for her son, Jasper P. Matagolai. Among other things, the complaint sought a declaratory judgment that certain life insurance change of beneficiary forms executed by plaintiff's husband before his death, eliminating her interest therein, were invalid and that the two insurance policies were community property in which plaintiff had a one-half interest.

The case was tried to the bench, the Honorable Robert A. Hefner, C.J., presiding, on April 13 and 14, 1987. The trial court's memorandum opinion was entered on April 22, 1987, judgment for Plaintiff followed on April 30, and Caridad Pangelinan and Rufina Matagolai filed a timely appeal.

## II. Facts

Jesus P. Matagolai was a Commonwealth Government employee since 1971. Prior to 1983 he was married and had two children, Ruth and Tana Matagolai. After a divorce from his first wife, he married the plaintiff, Cynthia Pua Matagolai in 1983. Jesus and Cynthia had been involved for five years prior to their marriage. The couple had two children, one of whom predeceased Jesus. The other, Jasper P. Matagolai, is represented by his mother in this suit as guardian *ad* *litem*. There is a history of considerable

**593**

acrimony between Cynthia and Jesus' family which has continued through and been exacerbated by this litigation, although the marriage itself was a good one.

After their marriage, in 1983 and 1984 Jesus applied for and was issued two life insurance policies. One was with the Pacific Guardian Life Insurance Co., Ltd. ("the Pacific policy") in the amount of $25,000. The second policy was with the Lincoln National Life Insurance Company ("the Lincoln policy") for $50,000. The beneficiaries on both policies were Cynthia and Jasper in equal shares.

Jesus became gravely ill in February of 1985 and was transferred to Tripler Army Medical Center in Honolulu in March. Cynthia and Caridad M. Pangelinan, Jesus' sister, accompanied him to Honolulu.

On March 21, 1985, Jesus executed a change of beneficiary form provided by Lincoln. As a result the beneficiaries were changed as follows:

>20% Jasper Matagolai, son;
>
>20% Puth Matagolai, daughter;
>
>20% Tana Matagolai, daughter;
>
>40% Rufina Matagolai, mother of Jesus.

Caridad returned from Honolulu to Saipan on or about April 2d, 1985, leaving Cynthia as the only family member remaining with Jesus.

On April 17th Cynthia signed a special power of attorney making Caridad her attorney for certain specified

**594**

purposes. On the same date, Jesus signed a power of attorney naming Caridad as his attorney for both specific and general purposes. The power of attorney forms were obtained from Tripler Hospital.

On May 22, 1985, Caridad exercised the general power of attorney to execute a change of beneficiary form for the Pacific insurance policy, as a result of which the beneficiaries were:

> 80% Rufina Matagolai;
>
> 10% Jasper Matagolai;
>
> 5% Ruth Matagolai;
>
> 5% Tana Matagolai.

As with the Lincoln policy, Cynthia was deleted as a beneficiary. On June 27, 1985, Jesus Matagolai died of cancer at Tripler Hospital.

### III. DISCUSSION

#### A. The Lincoln Policy

We first consider appellants' contention that the trial court exceeded its authority in applying principles of community property law to invalidate the change of beneficiary of the Lincoln policy. We review issues of law de novo on appeal. Marianas Public Land Trust v. Government of the CNMI, 2 C.R. 870, 882 (App. Div. 1986).

The trial court's Memorandum Opinion states:

> It is uncontradicted that the Lincoln policy was taken out after the marriage of Jesus to Cynthia. Jesus signed an "Employer Billing Plan of Premium Payment" (Plaintiff's Exhibit 8) which

**595**

allowed for the payment of the premiums out of his salary.

The Commonwealth is not a statutory community property jurisdiction. However, over the years and in the absence of legislation, the courts have adopted, to some extent, community property principles in the division of marital property. In Re Estate of Camacho, CTC Civil Action 82-72 (1983); Nekai v. Nekai, 4 TTR 338 High Court Trial Div. 1969).

. . . .

Life insurance policies are contracts which are designed to protect one's survivors and provide funds on the death of the insured. In community property states, policies of life insurance which insured the life of the husband and which are paid out of community property funds, are characterized as community property. (citations omitted.)

It is found that the Lincoln policy is community property and consistent with In Re Estate of Camacho, supra, each spouse, Jesus and Cynthia, owned one-half and on the death of Jesus, Cynthia retains her one-half. . . .

Memorandum Opinion at 6-7. On this basis Cynthia was held entitled to 50% of the Lincoln policy, Jasper, Ruth and Tana to 10% each, and Rufina to 20%

Contrary to appellee's position that this ruling merely relied on common law principles of equitable distribution principles analogous to community property rules, the above-quoted language makes it quite clear that the trial court intended to apply principals unique to community property law. At its broadest, the Memorandum Opinion can be read as importing a whole body of community property law into the law of the Commonwealth; at a minimum, its language opens the door for further court

596

decisions to achieve that result.[1] By adopting a community property law rule in the absence of a legislative mandate the trial court exceeded the scope of its authority and invaded the proper realm of the legislature.

Further, the trial court's decision is inconsistent with the legislative mandate apparent from 7 CMC § 3401, which provides in pertinent part that:

> In all proceedings, the rules of the <u>common law</u>, as expressed in the restatements of the law approved by the American Law Institute and, to the extent not so expressed as generally understood and applied in the United States, shall be the rules of decision in the courts of the Commonwealth, in the absence of written law or local customary law to the contrary; . . .

(emphasis added). Because community property is a product of civil law rather than of the common law, it appears that § 3401 would not authorize judicial adoption of community property law. Of some note, we are aware of no state which has adopted a community property system by way of judicial, rather than legislative, decision. <u>See</u> McClanahan, <u>Community Property Law in the United States</u> § 3:24-3:31 at 126-155 (1982).

Neither do we find support for this far reaching step in the CNMI Probate Code. While the Code does provide for

---

1. That using community property rules in one scenario will eventually lead to employing them in others is illustrated here by the court's reliance on two prior cases which appear to have borrowed concepts from community property law, <u>In Re Estate of Camacho</u>, CTC Civil Action 82-72 (1983) and <u>Nekai v. Nekai</u>, 4 TTR 338 (High Court Trial Div. 1969). To the extent that these cases may imply that community property law governs in the Commonwealth, they are disapproved.

certain rights of an omitted spouse under testate and intestate conditions, <u>see</u> 8 CMC §§ 2701, 2902, 2903, it does not demonstrate a legislative intent to provide for spouses by means of community property law.

Accordingly, the determination of the trial court that the Lincoln policy was community property is reversed. The proceeds of the Lincoln policy are to be distributed in accordance with the change of beneficiary form executed by Jesus in March 1985.

B. <u>The Pacific Policy</u>

Appellants also contend that the trial court erred in finding that Jesus had not given Caridad the authority to change any beneficiaries on the Pacific policy, and that the general power of attorney did not include the power to effect the change. Findings of fact are reviewed on appeal for clear error. <u>South Seas Corporation v. Sablan</u>, 525 F.Supp 1033, 1037 (DNMI 1981), <u>aff'd</u> 691 F.2d 508 (9th Cir. 1982). "A finding of fact of the trial court is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made." <u>Marianas Public Land Trust v. Government of the Commonwealth of the Northern Mariana Islands, et al.</u>, 2 C.R. 872, 881 (1986)(citing <u>United States v. Oregon Medical State Society</u>, 343 U.S. 326, 339, 72 S.Ct. 690, 698 (1952)), <u>rev'd</u> <u>on other grounds</u>, 838 F.2d 341 (9th Cir. 1987).

**598**

Although Caridad testified that Jesus had instructed her to change the beneficiaries over the telephone after she had returned to Saipan, the trial court found that her testimony was not credible. The court noted that it viewed Caridad's testimony about the alleged phone call from Jesus with caution because of "the obvious impossibility of determining the correctness or fabrication of the statement." Memorandum Opinion at 11. Appellants challenge this finding on the basis that the court made reference to both the "Dead Man's Statute" and to Rule 804(b) of the Rules of Evidence, arguing that Dead Man's Statutes have been largely discredited and that the statement was not hearsay. Regardless of the merit of these contentions, the court admitted the evidence and considered it, and was certainly entitled to view it with some reluctance given both the impossibility of corroboration and the surrounding circumstances which made its veracity highly doubtful. See Mayview Corp. v. Rodstein, 620 F.2d 1347, 1353 (9th Cir. 1980)(accept trial court's findings of fact if not clearly erroneous, giving due regard to its opportunity to judge the credibility of witnesses).

Appellants next argue that the Court used an unduly restrictive standard in construing the powers granted in the general power of attorney which Jesus executed while at Tripler. We review issues of law de novo. Marianas Public Land Trust v. Government of the CNMI, 2 C.R. 870, 882

(App. Div. 1986).

The Memorandum Decision states that:

> . . . it is the conclusion of the court that without further specific instructions, Caridad had no authority to change the beneficiaries on the Pacific policy. The general terms and words of the power of attorney are to be restricted by the context and the authority given is to be construed strictly so as to exclude the exercise of any power that is not warranted either by the terms actually used or as a necessary means of executing with effect the authority given. 3 Am.Jur. 2d, Agency § 32.

Id. at 10-11. The Court then found that at the time of the execution of the power of attorney by Jesus there had been no discussion between Jesus and Caridad about changing the Pacific policy beneficiaries and that the only purpose of the power of attorney at the time of its execution was to apply for advance annual and sick leave. Id.

Appellants appear to agree that interpretation of the power of attorney must be guided by the context to determine the intent of the granting party, but disagree with the court's resulting conclusion. However, they do argue that the court erred in construing the power "strictly." Narrow construction of a general power is supported by the weight of the authority. Rest. 2d, Agency §§ 34, 37; Hodge v. Combs, 66 U.S. (1 Black) 192, 17 L.Ed. 157 (1861); King v. Bankerd, 465 A.2d 1181, 1185 (Md. App. 1983); W. Seavey, Handbook of the Law of Agency § 21 (1964).

Appellants give four factual reasons for finding the trial court erred here. They first point to the broad

**600**

language of the general power:

> "Giving and Granting unto my said attorney full power and authority to do and perform all and every act, deed, matter, and things whatsoever in and about my estate, property, and affairs, as fully and effectually to all intents and purposes as I might or could do in my own proper person if personally present, the above specifically enumerated powers being in said and exemplification of the full, complete and general power herein granted and not in limitation or definition thereof; and hereby ratifying all that my said attorney shall lawfully do or cause to be done by virtue of these presents.

This kind of boilerplate language is generally narrowly viewed, particularly where, as here, the power also contains numerous specific grants of authority to act. Rest. 2d Agency § 37(2) and Comment a. A general discretion vested in the agent is not unlimited, but rather must be exercised in a reasonable manner and "cannot be resorted to in order to justify acts which the principal could not be presumed to intend, or which would defeat and not promote the apparent end or purpose for which the power was given." King v. Bankerd, 465 A.2d 1181, 1185 (Md. App. 1983); see also Mercantile Trust Company v. Harper, 622 S.W. 2d 345, 349 (Mo. App. 1981)(citing Rest. 2d for rule that broad powers of attorney must be discounted and that potentially hazardous powers cannot be inferred from the general power unless reasonably clear.) Thus the broad language undermines, rather than supports, appellants' position.

Appellants suggest that the fact that Cynthia obtained her power of attorney at the same time from Tripler

**601**

and was given a special, not general, power of attorney form from the hospital is probative of Jesus' intent to authorize the change of beneficiaries. They also contend that Cynthia's testimony that Jesus told her he understood the document's meaning when he signed it and the undisputed fact that Jesus had earlier made a similar change of beneficiaries on the Lincoln policy support their interpretation of the power of attorney.

It is much more plausible that, in the absence of any finding of deteriorating relations between Jesus and Cynthia, a change of beneficiaries on the Lincoln policy should not indicate an intent to also deprive her of benefits from the Pacific policy. In fact, it would seem to support the opposite conclusion, since there is no apparent motive for Jesus to leave his wife unprovided for.

In light of the above, we affirm the trial court's determination that Jesus did not authorize the change of beneficiaries of the Pacific policy either verbally or through the general power of attorney.

## IV. SUMMARY

The grant of summary judgment is reversed as to the Lincoln policy and the proceeds of that policy are to be distributed in conformity with the March 1985 change of beneficiary form. We affirm the judgment of the trial court

602

as to the Pacific policy.

REVERSED IN PART AND AFFIRMED IN PART.

DATED: *Nov. 18, 1988*

ALFRED LAURETA, Judge

SAMUEL P. KING, Senior Judge

JOSE S. DELA CRUZ, Associate Judge