CRAWFORD v. JONES, Appellant.

**Division One, June 12, 1901.**

1. **Resulting Trust: PAROL PROOF.** Where defendant testified that he had $500 or $600 at the time of his marriage, that they spent a great deal of money for housekeeping, furniture, doctor's bills, etc., but that this money was spent before he moved to Cooper county, and that two days after his wife's curator paid him $650 he bought a farm in Cooper county for $1,350, paying $750 cash, the balance deferred, and another witness testifies that he stated to him during his wife's lifetime that the farm was bought with her money, it will be held that there is clear and cogent proof to sustain the chancellor's decree that $600 of his wife's money went to purchase the farm.

2. ——: LIEN ON LAND. If a certain amount of the wife's money went into the purchase of a farm deeded to her husband, and the proceeds of the sale of that farm after her death bought land now held by him, her children or heirs are entitled to a decree of a resulting trust in the last farm so bought by him, and it is within

the discretion of the trial court, in enforcing that trust, to set off a proper proportion of the farm to them or decree a lien on the whole farm for the money, according as the circumstances of the case show that right and justice require.

Appeal from Morgan Circuit Court.—*Hon. D. W. Shackleford,* Judge.

AFFIRMED.

*A. L. Ross* for appellant.

(1) In equity proceedings, the appellate court will review the evidence offered in the trial court. Beck v. Poland, 55 Mo. 26; Morey v. Staley, 54 Mo. 419. (2) The evidence is wholly insufficient to warrant or sustain the finding of the court. Evidence to establish a resulting trust must be so clear, strong and unequivocal as to remove from the mind of the chancellor every reasonable doubt as to the existence of the trust. Adams v. Burns, 96 Mo. 361; Burdett v. May, 100 Mo. 13; Dailey v. Dailey, 125 Mo. 96; King v. Isley, 116 Mo. 156. (3) It is not sufficient even to show the possession of the money and the purchase of the land by the alleged trustee. The money must be clearly and distinctly traced into the land. It must be clear that the lands have been paid for out of the trust money. Phillips v. Overfield, 100 Mo. 466; Dailey v. Dailey, supra; Huetteman v. Viesselmann, 48 Mo. App. 582. (4) There should be no room for a reasonable doubt as to the facts relied upon to establish a resulting trust. A mere preponderance of the evidence is not sufficient. Adams v. Burns, 96 Mo. 361. (5) Parol evidence, in order to establish a resulting trust, must be so clear, strong and unequivocal, and so definite and positive as to leave no room for doubt in the mind of the chancellor as to the existence of the trust. Mc-

Farland v. La Force, 119 Mo. 585; Plumb v. Cooper, 121 Mo. 668. (6) Where the means of identification fail, the powers of the court with reference to a trust fund must also cease. Buck v. Ashbrook, 59 Mo. 200; Phillips v. Overfield, 100 Mo. 473.

*R. M. Embry* for respondent.

(1) A husband who, without the written assent of his wife, as is provided by statute, invests in land money belonging to her, will hold the title in trust for the wife. This was the law in 1878, as well as now. R. S. 1899, sec. 4340; Perry on Trusts (4 Ed.), sec. 127. (2) The same rule applies to a portion of the purchase money as it does to all, the resulting trust attaching in the ratio of ownership. Shaw v. Shaw, 86 Mo. 594; In re Ferguson's estate, 124 Mo. 574; Jones v. Elkins, 143 Mo. 647. (3) The trust may be established by parol evidence, even against a deed absolute on its face, and the testimony of Varner, Monks and the appellant is abundant for this purpose. Perry on Trusts (4 Ed.), secs. 226 and 839; Darling v. Potts, 118 Mo. 506; Hall v. Hall, 107 Mo. 101; Price v. Kane, 112 Mo. 412. (4) Admissions of the party holding the legal title are admissible in establishing a resulting trust, and appellant admitted in his testimony that his wife's money went into the land, but that he was not positive whether all the $750 paid was his wife's or not. Baumgartner v. Guessfeld, 38 Mo. 36; Perry on Trusts (4 Ed.), sec. 77. (5) Circumstantial evidence as to the means of the nominal purchaser and his financial condition, and that it was impossible for the nominal purchaser to pay the purchase money, is competent to establish a trust. Perry on Trusts (4 Ed.), sec. 137. (6) Where a trustee purchases an estate, partly with his own and partly with trust money, on establishing this

fact the *cestui que trust* will have a lien on the whole estate for the whole amount of the trust fund. Munroe v. Collins, 95 Mo. 42; Harrison v. Smith, 83 Mo. 210; Huetteman v. Viesselmann, 48 Mo. App. 582; Bank v. Ins. Co., 104 U. S. 54. (7) Trust money does not have to be distinguished by earmarks, and though it be impossible to follow the fund in its diverted uses, it is always possible to make it a charge upon the estate to which it has been appropriated. Leonard v. Latimer, 67 Mo. App. 138; Hockensmith v. Hockensmith, 57 Mo. App. 374; Brick Co. v. Schoeneich, 65 Mo. App. 283; Stoller v. Coates, 88 Mo. 514. (8) The change of trust property from one state or fund to another will not defeat the trust. The trust will attach to property which is substituted for the original property. In this case the trust property was changed from one piece of land to another. Phillips v. Overfield, 100 Mo. 466. (9) If Jones purchased the Cooper county land partly with his wife's money and partly with his own, a trust resulted to the wife and her heirs, and the burden is on Jones to show the amount of his own funds that went into the purchase, otherwise, the *cestui que trust* or her heirs take the whole. Perry on Trusts (4 Ed.), sec. 128; McLarren v. Brewer, 51 Me. 402; Bank v. King, 57 Pa. St. 202; Persch v. Quiggle, 57 Pa. St. 247.

VALLIANT, J.—This is a suit in equity to establish a resulting trust. Plaintiff is the daughter of defendant and claims as the sole heir of her deceased mother, who was the wife of defendant.

The testimony showed that the defendant and plaintiff's mother were married in Moniteau county in 1876, the plaintiff's mother at that time being a minor with some estate in the hands of a curator. The defendant was an industrious young farmer, and after his marriage conducted his business

on a rented farm. The only observable property that he had was a horse, but he testified that he also had at that time between $500 and $600. They lived two years on a rented farm. On February 15, 1878, the curator of defendant's wife, having made a final settlement of his curatorship in the probate court, paid to defendant, as the balance due on that settlement, $650. Three days after that transaction, February 18, 1878, defendant bought a farm in Cooper county for $1,350, paying cash $750, balance deferred, taking the deed in his own name. In March, 1880, he sold twenty acres of that land for $250. His wife died in December, 1881, leaving the plaintiff, then three or four years old, her only heir. In September, 1883, defendant sold the remainder of the Cooper county farm for $1,800, his second wife (he having married again in the meantime) joining him in the deed. About six weeks after his sale of the Cooper county farm he bought a 139-acre farm in Morgan county for $2,400, paying cash $1,250 or $1,300, the balance deferred. In 1884 he sold 40 acres of the Morgan county land to one Yates for $250, and in 1889, 39 acres to one Campbell for $700 and continued to own and occupy the rest until March 6, 1896, when he sold it to one Monks for $1,780, and on March 21, that is, about two weeks thereafter, he bought another 80-acre tract in Morgan county, paying $1,750 cash for same. It is into this last purchase the plaintiff seeks to establish her right as heir of her mother as beneficiary in the resulting trust.

A witness for plaintiff, William Varner, a near neighbor of defendant, when he lived on the Cooper county farm, testified that defendant told him about the time that farm was purchased that he had paid for it with his wife's money.

Plaintiff called defendant as a witness and he testified that before his marriage he worked on farms at $16 and $18 a month and at the time of his marriage he owned a horse and

had between $500 and $600 in cash; that after his marriage he collected $650 from his wife's curator: "Q. How much of it went into that land you bought out in Cooper county? A. I couldn't say a dollar went into it. We had a good bit of sickness after we married; housekeeping was high; she carried this money on her person; she paid her own debts in California, what she owed. She paid a good deal of money for furniture. Q. You don't mean to say you spent all her money paying doctor's bills and things of that kind? A. We had our money together, and she carried it. Q. And you paid what was necessary to pay out of the general fund? A. I paid—when I wanted money I got it of her. She paid her own debts she owed in California." On further examination he said that it was $50 or $60 she paid for furniture and $16 or $20 for debts she owed. He said: "Sappington (that was the curator) wrote me word to come and get the money. When I got it I gave it to my wife. I went to Cooper county and bought a farm. I paid some money down. The money I paid down I paid myself. My wife had been carrying it. Q. It was out of the money she carried of hers and yours together? A. It might have been out of it, but I could not say positively whether it was all hers or not. We used it for our own general purposes. The debts she paid and the household and kitchen furniture she bought were before I went to Cooper county and bought the farm, I don't know how much of her money she used before I bought the Cooper county land. She used it for her own purposes; she carried it. I bought the land in Cooper county in 1877 and sold it in 1883. The deeds tell, I can't say just how many dollars I got for it. Q. Now I will ask you if you used any of that money for any other purpose except to buy land, and if so how much? A. Yes, sir; I used it to buy hogs, calves and sheep; I used two or three hundred dollars; sometimes four." He further testified that all the

money he paid for the land he now owns was his own money accumulated in farming and stock raising. The court found that the wife's money to the amount of $600 went into the Cooper county farm and traced it through the various sales and purchases into the land the defendant now owns and instead of setting off a part of the land to the plaintiff, decreed her a lien on the land for $600, from which decree the defendant appeals.

We agree with all that the learned counsel for appellant in his brief says about the necessity of requiring clear and cogent proof, carrying conviction beyond a reasonable doubt, in order to establish a resulting trust of this character, and the authorities cited sustain his position. [Adams v. Burns, 96 Mo. 361; Burdett v. May, 100 Mo. 13; Phillips v. Overfield, Id. 466; King v. Isley, 116 Mo. 155; Dailey v. Dailey, 125 Mo. 96.] But measured by that rule we think the chancellor's finding is fully sustained by the evidence. The purchase of the Cooper county land followed almost immediately on the receipt of the wife's money from her curator; only two days intervened between the date of defendant's receipt for the money and that of his deed to the land. If he had heavy housekeeping expenses, furniture bills, debts and doctor's bills they all occurred while he lived in Moniteau county, according to his own testimony, and doubtless consumed part of the $500 or $600 he had on hand when he married. When he said: "I used it to buy hogs, calves and sheep, I used two or three hundred dollars; sometimes four," he was speaking of a custom, not of a definite transaction, and it was as applicable to one period as another. Soon after his purchase of the Cooper county land he told his neighbor Varner that he had paid for it with his wife's money. That was before any interest intervened between his and his wife's, when they were both young with a joint life before them. The sale of one farm and the

purchase of another were transactions which followed so closely, and the selling price of the one and the purchasing price of the other were so much alike as to leave no doubt that the proceeds of the one purchased the other.

Plaintiff does not claim the whole land but only the proportionate share that her mother's money paid for. A resulting trust may be established in that ratio. [Shaw v. Shaw, 86 Mo. 594; In re Ferguson's estate, 124 Mo. 574; Jones v. Elkins, 143 Mo. 647.]

And whilst the plaintiff might have had a proportionate share of the land set apart to her, yet, she may instead have her proportionate interest in money decreed as a lien on the land. [Perry on Trusts (4 Ed.), sec. 128.] In such case it is in the sound judicial discretion of the court to render a decree for a share of the land or for the money value of the proportionate interest as a lien on the whole, according as the circumstances of the case show that right and justice between the parties require. The chancellor has exercised a wise discretion in this case.

The judgment is affirmed. All concur.