Marvin Cross, Mary (Mollie) Woods, Irene Shores, Mabel Carr, Ida Beal, Morris W. Thrailkill, Gertrude Assie and Josephine Cameron, Respondents, v. Maggie Cross, Maggie Cross, Executrix of the Estate of Sam Cross, Deceased; Leroy Oldham, George Oldham, W. N. Martin, Onie Oscar Martin, Mamie Martin Lewis, Flora Bartee Conrad, Presley Bartee, Lorenzo Dow Gallup, William T. Cross, Mary Cole, Edwin Hanson Morris, Joseph Newton Morris and Marvin Cross Morris and Helen Caswell, Appellants, No. 42767—246 S. W. (2d) 801.

Division One, March 10, 1952.

*Don C. Carter* for appellant Maggie Cross.

*William M. Stringer* for respondents.

HYDE, J.—Action in equity to recover a trust fund and to impress a lien for the amount thereof on real and personal property held in entirety by Sam Cross and Maggie Cross, husband and wife, and, since the death of Sam Cross in 1947, held by Maggie Cross. The Circuit Court's decree ordered a personal judgment against Maggie Cross for the amount of the original trust fund, $2422.38, with interest from the date of death of Sam Cross to the time of entering the decree, $264.00, and interest thereafter, at 6%; and also provided that she could not claim any homestead or other exemptions against the judgment, which was also ordered against the estate of Sam Cross. (However, there were no assets in the Sam Cross estate.) Maggie Cross appealed to the Kansas City Court of Appeals, which after opinion reversing and remanding with directions, transferred the case here as involving a question of great public importance.

The principal question for decision is whether a personal judgment can be entered against Maggie Cross under the facts of this case; also involved is the matter of following trust funds through an estate in entirety to the property held by the surviving spouse. The part of the petition, showing plaintiffs' theory of recovery, and the material parts of the decree are set out in the opinion of the Court of Appeals.

(Cross v. Cross, 241 S. W. (2d) 71.) No question as to rights of other creditors is involved.

The trust fund was created by the will of Clay Cross, a brother of Sam Cross, and was to go at the death of Sam Cross to another brother, plaintiff Marvin Cross during his lifetime; and at the death of Marvin Cross it was to go absolutely to the other brothers and sisters of the testator. They or their descendants are the other parties hereto. Sam Cross received the fund in 1925 while a resident of California. He came back to Missouri in 1945 and bought a residence in Clark, taking title in entirety. Maggie Cross did not testify but in answer to interrogations put in evidence by plaintiffs, said that she had *no recollection* of her husband ever receiving the trust fund. However, there was evidence that Maggie acknowledged knowing about the trust fund; and said to Mrs. Marvin Cross, in 1945, that it had helped them but that "she didn't think we ought to have to pay it"; and that she also said to a niece in 1948: "I have a year to pay it in and I want you all to know I'm going to pay it." It was shown that Sam also received $5233.63 as his own property, in 1937, from the estate of another brother, J. T. Cross. Maggie said in the interrogatories that Sam owned 65 acres near Clark at the time they were married in 1897 and sold this land in 1945 for $2900.00, of which all but $1050.00 was paid to him, which balance was collected by Maggie after his death. The note on which this balance was paid was payable to them jointly. At his death, other property in their names jointly included a house in California worth $3000.00 (which she later sold), government bonds in the amount of $2325.00 (purchased between 1942 and 1945) and $1000.00 in a bank account, out of which Sam's funeral expenses were paid. In the interrogatories, Maggie Cross also said that at one time in California, they used $1500.00 paying hospital and doctor bills for Sam. She sold the California property after his death. She said the property in Clark was bought for $1250.00 and paid for out of the funds received from the sale of the 65 acres. However, there was also evidence that they bought another house in Clark through Marvin before they moved back from California, which they sold and then bought the one now owned by Maggie.

The trial court found (and the evidence supports this finding) that Sam Cross commingled the trust fund with his own property; that Maggie had no separate property going into this commingled property; and that the whole was eventually placed in their joint names so that at Sam's death Maggie got the whole title. In this situation she was in the position of a donee of trust property, because all the property she received was the product of the commingled trust fund and Sam's own property; except perhaps the proceeds of the sale of Sam's 65 acres which will be discussed later. "It is a well-established rule that when a trustee has received and commingled trust funds with his own funds, it is presumed, in the absence of a

contrary showing, that the trust funds are still there, and it will be considered that what was paid out of the commingled funds for other than trust purposes was paid out of the trustee's personal funds and not out of the trust money, and that all the rest remains as trust funds." (Lolordo v. Lacy, 337 Mo. 1097, 88 S. W. (2d) 353; see also Orr v. St. Louis Union Trust Co., 291 Mo. 383, 236 S. W. 642; A. L. I. Restatement of Trusts, Sec. 202, comments h, i and j; 54 Am. Jur. 198-207, Sec's. 256-262.) "Where * * * the trustee by wrongfully disposing of trust property acquires other property, the beneficiary can follow the trust property into the product, and can enforce a constructive trust or equitable lien upon the product." (Scott on Trusts, Sec. 202, see also Sec's. 507-521.) Sam's commingled property appears to have at all times been of greater value than the amount of the trust fund so there can be no question as to plaintiffs' right to enforce an equitable lien upon it for the amount of the trust. fund.

As donee of trust property, by thus receiving her title without consideration, Maggie does not hold the property free from the trust. (Restatement of Trusts, Sec. 289; Scott on Trusts, Sec. 289.) "A person to whose hands a trust fund comes by conveyance from the original trustee is chargeable as a trustee in his turn, if he takes it without consideration, whether he has notice of the trust or not." (Scott, Sec. 289, quoting Justice Holmes in Otis v. Otis, 167 Mass. 245, 45 N. E. 737.) Thus even as a donee without notice of the breach of trust, who still has the property, Maggie could be compelled to restore the trust fund. (Restatement of Trusts, Sec. 292; Price v. Morrison, 291 Mo. 249, 236 S. W. 297; Scott on Trusts, Sec. 510.) If a donee without knowledge of the breach, she would only become personally liable for the value of the fund by a refusal to restore the property after she had knowledge of the breach of trust (which liability would be for its value with interest thereon from the time of refusal); or by making a transfer of the trust property after knowledge of the breach of trust. (Restatement of Trusts, Sec. 292, comments k, l and m; Scott on Trusts, Sec. 292.3.) However, the trial court found in its decree herein that she "knew that the said Sam Cross had received the said fund from the estate of the said W. C. Cross in trust as provided in the will of the said W. C. Cross and recognized it as an obligation which she should pay:" We think the evidence supports this finding as the Court of Appeals also concluded.

While it is true (as the Court of Appeals said) it was not shown that, during Sam's lifetime, Maggie "had received the fund and had commingled it with her property or with property belonging to her and Sam"; it was likewise true (as the Court of Appeals also said) "that she knew her husband had received the fund; knew that it was a trust fund; and knew that he had not accounted for it." (241 S. W. (2d), l. c. 75.) Thus she did take the property with knowledge

of its trust character. As the above authorities·show, to fix personal liability on her, it was not necessary that she should have participated in the original receipt of the fund or in commingling it with other property during Sam's lifetime. It may be conceded that she was not personally liable when he died. However, she became liable personally for the value of the fund, after his death, because she knew of Sam's breach of trust (in commingling the trust fund with his property and placing the title to·all of it so that it would all go to her, leaving nothing in his estate to restore the fund) and because knowing that she had acquired title to all of his property, including the trust fund, she refused to restore it to the beneficiaries after his death.

Thus plaintiffs were entitled to a personal judgment against Maggie and were entitled to an equitable lien upon the property she received from Sam and had not disposed of at the time of the suit (as listed in the interrogatories) or upon the proceeds of such property if she had disposed of any of it. (Restatement of Trusts, Sec. 291, comment n; Scott on Trusts, Sec. 291.4; Crawford v. Jones, 163 Mo. 577, 63 S. W. 838.) The only exception to this is the proceeds ($1050.00) of the uncollected balance on the note (at the time of Sam's death) for the purchase price of Sam's 65 acres, which he owned prior to the time he received the trust fund and which Maggie collected after his death. The only showing on this was that Sam had owned the 65 acres long·before he received the trust fund and there was no evidence to the contrary. This note was for part of its purchase price (secured by a trust deed on the land) and thus, as to it, there was a definite showing that the trust fund never went into this 65 acres and that this note (of $1050.00 balance) was never commingled with the trust property but remained separate from it in a form which could be identified as derived from a source other than the trust fund. As to the proceeds of the sale of this 65 acres, which Sam collected during his lifetime, there was no such definite showing and, therefore, the presumption is that they and the trust property were commingled. At least, the evidence on that matter was conflicting and, since the court so found, we will defer to that finding. We hold that the court properly entered a personal judgment against Maggie but should have also impressed an equitable lien upon the property she received from Sam as a result of title by the entirety (as the petition prayed), except the proceeds of the mortgage'note ($1050.00) collected after his death, or, if she has disposed of any of this property, the equitable lien should also be impressed upon the proceeds thereof.

The judgment is reversed and the cause remanded with directions to enter a decree in accord with the rulings herein made. All concur.