In the ESTATE OF Mary Helen
RUSSELL, Deceased.

Mia Michelle RUSSELL (now Phillips), Personal Representative of the Estate of Mary Helen Russell, Deceased, Appellant,

v.

Donald P. RUSSELL and Velma
Russell, Respondents.

No. 20579.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 16, 1996.

Opinion Denying Rehearing and
Denying Transfer to Supreme Court
Oct. 15, 1996.

Application to Transfer Denied
Nov. 19, 1996.

Clifford S. Brown, Carnahan, Evans, Cantwell & Brown, P.C., Jay P. Cummings, Gannaway, Fiorella & Cummings, Springfield, for Appellant.

Jeffrey T. Adams, Poague, Wall, Eshelman & Cox, Clinton, for Respondent Velma Russell.

No appearance for Respondent Donald P. Russell.

CROW, Presiding Judge.

On October 21, 1991, the Probate Division of the Circuit Court of Webster County ("the trial court") entered judgment for $124,000 in favor of the personal representative of Mary Helen Russell, deceased, against Donald P. Russell ("Donald").[1]  On June 14, 1995, at the instance of the personal representative, the trial court issued an execution against Donald.

On June 26, 1995, the sheriff of Bates County, pursuant to the execution, levied upon all right, title and interest of Donald in a tract of real estate in that county.  We henceforth refer to the tract as Lot 111.[2]

On July 10, 1995, Velma Russell ("Velma") filed in the trial court a "Petition to Stay, Set Aside and Quash Execution, and Stop Any Execution Sale."  Attached thereto was a copy of a warranty deed executed November 18, 1991, conveying Lot 111 to Donald and Velma, husband and wife.  Velma's petition averred she and Donald own Lot 111 as tenants by the entirety, hence it is not subject to execution on a judgment against Donald alone.  Citing Rule 76.25,[3] Velma prayed the trial court to stay the execution and quash the levy.

---

1. For brevity and clarity, we refer to the people involved in this litigation by forename or surname, as convenient.  We mean no disrespect.

2. The legal description of the tract is: All of Lot 111 in Country South Extension Number One, an Addition to the City of Butler, Bates County, Missouri.

3. Citations to rules are to Missouri Rules of Civil Procedure (1995).  Rule 76.25 reads:
    "The person whose property has been levied upon may apply to the judge of the division of the court out of which the same was issued for a stay of execution or to quash the execution.  Reasonable notice of the time of the hearing on the application shall be given to opposing parties.  The application shall be by petition setting forth good cause why the execution should be stayed or quashed.  The court may require the petitioner to provide a sufficient bond with adequate security approved by the court, conditioned upon the delivery of the property."

According to the trial court's "case history sheet," counsel for Velma and counsel for the personal representative appeared before the court on August 4, 1995, and argued Velma's petition. In a "Judgment Entry" filed September 25, 1995, the trial court granted Velma's petition.

The personal representative brings this appeal from that judgment. We henceforth refer to the personal representative by her current surname shown on her notice of appeal: Phillips.

The record on appeal consists of only a legal file. It reveals the following facts.

Mary Helen Russell ("Mary") died November 12, 1982. She left a will bequeathing all her tangible personal property and certain insurance policies to her surviving children. The residue of Mary's estate was devised and bequeathed to Donald as trustee for Mary's children pursuant to a trust created by the will. The will designated Donald as executor.

The will was filed for probate. Although the record is incomplete, it indicates that several years later, Phillips was appointed administratrix de bonis non. She thereafter filed a petition for discovery of assets, and summonses were issued and served on Donald and Velma.

On September 5, 1991, a hearing was held in the trial court. Phillips, Donald and Velma appeared, each represented by separate counsel. Evidence was heard.

On October 21, 1991, the trial court entered the judgment referred to in the first sentence of this opinion. The judgment states, in pertinent part:

"4. ... Donald ... received all of the property and interests in property of [Mary], but instead of delivering the tangible personal property to [Mary's] children and holding the residue in trust for the benefit of [Mary's] children as provided by [her] Last Will and Testament, said [Donald] appropriated all of such property and interests in property to his own use, sold the same and commingled the funds with his own funds, all in breach of his fiduciary duty.

5. The Estate of Mary ... has been damaged by the actions of ... Donald ... in the sum of One Hundred Twenty–Four Thousand Dollars ($124,000.00).

Wherefore, it is ordered, adjudged and decreed by the Court that:

(1) The Estate of Mary ... have, and is hereby granted, a judgment against Donald ... in the sum of One Hundred Twenty–Four Thousand ($124,000.00) with interest thereon from and after November 12, 1982.

(2) The Estate of Mary ... recover nothing from Velma. . . ."

■ Phillips's brief presents two points relied on; the first reads:

"The [trial] court erred in ... sustaining the petition to quash execution and set aside levy with respect to [Lot 111] titled in the names of [Donald] and [Velma] because no tenancy by the entirety exists, or can exist, between [Donald] and [Velma] in that property, and [Donald's] interest in the property is, therefore, subject to execution to satisfy the judgment in favor of [Phillips], in that:

A. trust property does not belong to the fiduciary and cannot be transferred to the private use or for the benefit of the fiduciary;

B. the judgment entered [October 21], 1991, upon which the execution and levy was based, specifically found that [Donald] misappropriated trust property on November 12, 1982 and commingled the trust property with his own, 'all in breach of his fiduciary duty';

C. this commingling of trust and personal assets, and the consequent creation of an indistinguishable mass, results in all property in [Donald's] possession being treated, at law and in equity, as trust property; and

D. [Phillips] may recover the value of the trust property by execution on the judgment."

Phillips relies primarily on *Cross v. Cross*, 362 Mo. 1098, 246 S.W.2d 801 (1952), an action in equity to recover a trust fund and impress a lien for the amount thereof on property held by a husband (Sam) and wife

(Maggie) as tenants by the entirety and, after Sam's death, by Maggie alone.

The facts in *Cross* are analogous to those here. Sam's brother created a testamentary trust. 246 S.W.2d at 802. Sam received the trust fund in 1925. *Id.* He thereafter commingled the fund with his own assets. *Id.* at 803. No separate property of Maggie went into the commingled mass, all of which was placed in the joint names of Sam and Maggie. *Id.* When Sam died in 1947, *id.* at 802, Maggie became the sole titleholder. *Id.* at 803. The Supreme Court of Missouri held:

> "It is a well-established rule that when a trustee has received and commingled trust funds with his own funds, it is presumed, in the absence of a contrary showing, that the trust funds are still there, and it will be considered that what was paid out of the commingled funds for other than trust purposes was paid out of the trustee's personal funds and not out of the trust money, and that all the rest remains as trust funds.... Where * * * the trustee by wrongfully disposing of trust property acquires other property, the beneficiary can follow the trust property into its product, and can enforce a constructive trust or equitable lien upon the product.... Sam's commingled property appears to have at all times been of greater value than the amount of the trust fund so there can be no question as to plaintiffs' right to enforce an equitable lien upon it for the amount of the trust fund.

> As donee of trust property, by thus receiving her title without consideration, Maggie does not hold the property free from the trust.... A person to whose hands a trust fund comes by conveyance from the original trustee is chargeable [sic] as a trustee in his turn, if he takes it without consideration, whether he has notice of the trust or not.... Thus even as a donee without notice of the breach of trust, who still has the property, Maggie

could be compelled to restore the trust fund."

*Id.* at 803.

The Supreme Court held the plaintiffs were entitled to an equitable lien on the property Maggie received from Sam and had not disposed of at time of suit, or upon the proceeds of such property if she had disposed of any of it. *Id.* at 804. The Supreme Court further held that the plaintiffs were entitled to a personal judgment against Maggie. *Id.* The opinion explained:

> "It may be conceeded [sic] that [Maggie] was not personally liable when [Sam] died. However, she became liable personally for the value of the fund, after his death, because she knew of Sam's breach of trust (in commingling the trust fund with his property and placing the title to all of it so that it would all go to her, leaving nothing in his estate to restore the fund) and because knowing that she had acquired title to all of his property, including the trust fund, she refused to restore it to the beneficiaries after his death." *Id.*

In the instant case it is evident that Velma knew of Donald's breach of trust on October 21, 1991, if not earlier. That is the date the trial court entered judgment on Phillips's petition against Donald and Velma for discovery of assets. The excerpt from that judgment quoted *supra* recites that Donald appropriated property of Mary's estate, sold it, and commingled the funds with his own funds, all in breach of his fiduciary duty, thereby damaging the estate in the sum of $124,000. As reported earlier, Lot 111 was deeded to Donald and Velma on November 18, 1991—after that judgment.

■ Phillips's theory, as we comprehend it from the argument under her first point, is: (a) the 1991 judgment established that all assets held by Donald after November 12, 1982 (the date Mary died), were trust assets by reason of Donald's wrongful commingling of the estate's assets with his own, (b) when Donald married Velma on December 31, 1985,[4] all assets in Donald's possession were

---

4. Phillips's brief avers Donald married Velma on December 31, 1985. Velma's brief makes the same assertion. Where a statement of fact is asserted in one party's brief and conceded to be

true in the adversary's brief, we may consider it as though it appears in the record. *Robinson v. Empiregas Inc. of Hartville*, 906 S.W.2d 829, 835[4] n. 6 (Mo.App.S.D.1995).

trust assets, consequently he had no assets of his own with which to create a tenancy by the entirety in Lot 111, (c) Phillips was thus allowed to follow the commingled assets into Lot 111 and enforce an equitable lien on it, and (d) Phillips did so by levying execution on it.

Velma responds by citing *United States Fidelity and Guaranty Co. v. Hiles,* 670 S.W.2d 134 (Mo.App.E.D.1984), which holds that property owned in tenancy by the entirety cannot be levied upon to satisfy the individual debt of one spouse. *Id.* at 137[4]. *Accord: Merrill Lynch, Pierce, Fenner and Smith, Inc. v. Shackelford,* 591 S.W.2d 210, 215[9] (Mo.App.W.D.1979).

Phillips attempts to answer Velma by directing us to *Madden v. Fitzsimmons,* 235 Mo.App. 1074, 150 S.W.2d 761 (1941), which explains:

> "[A] judgment creditor, after exhausting his remedies at law, may ... [cause] an execution to be issued upon his judgment and levied upon the land of his debtor which has been fraudulently conveyed, in which event he, or whoever else becomes the purchaser at the execution sale, may, after receiving the sheriff's deed, then bring a suit in equity to set aside the fraudulent conveyance as a cloud upon his title."

*Id.* at 766[5]. Based on that passage, Phillips says she has "the right to levy upon the real property here in question even though it has been improperly conveyed into the names of [Donald] and [Velma]."

Phillips fails to recognize the difference between *Madden* and the facts here. In *Madden,* the issue was whether a conveyance of land by Clark to Dranz was fraudulent in that it was for the purpose of placing the land beyond the reach of Janosik, who was about to obtain a judgment against Clark. Here, Phillips is not attempting to set aside the conveyance of Lot 111 to Donald and Velma. Instead, Phillips seeks to have Lot 111 sold at execution to satisfy the judgment against Donald.

Phillips does not claim Donald owned any interest in Lot 111 prior to November 18, 1991, the date it was deeded to him and

Velma. The grantors in that deed were Walton C. Whitney and Ruby L. Whitney. Nothing in the record suggests that the Whitneys knew about Phillips's judgment against Donald or that the Whitneys had any reason to suspect that Donald paid any part of the purchase price for Lot 111 (whatever it was) with misappropriated funds (if indeed he did). The record is likewise bare of any hint that the Whitneys deeded Lot 111 to Donald and Velma as tenants by the entirety to thwart any creditor of Donald. In sum, the record contains no basis for setting aside the deed from the Whitneys to Donald and Velma.

■ Furthermore, setting the deed aside would not help Phillips collect the judgment, as ownership of Lot 111 would revert to the Whitneys. If Phillips's theory is that the deed should be reformed so Donald is the sole grantee, Phillips cites no authority authorizing such relief on the sparse facts here. Additionally, nothing in the record indicates Phillips sought such relief in the trial court. An appellate court will not, on review, convict a trial court of error on an issue which was not put before it to decide. *Lincoln Credit Co. v. Peach,* 636 S.W.2d 31, 36[12] (Mo. banc 1982), *appeal dismissed,* 459 U.S. 1094, 103 S.Ct. 711, 74 L.Ed.2d 942 (1983).

All the trial court had before it when it entered the judgment appealed from was a levy by Phillips on Lot 111 (entireties property) to collect a judgment against one entireties tenant (Donald). On those facts, it is clear from *United States Fidelity,* 670 S.W.2d at 137[4], and *Merrill Lynch,* 591 S.W.2d at 215[9], that the trial court ruled correctly in quashing the levy. Phillips's first point is denied.

■ Her second point:

> "The [trial] court erred in ... sustaining the petition to quash execution and set aside levy with respect to [Lot 111] titled in the names of [Donald] and [Velma] because the respective interests of [Donald] and [Velma] in that property is [sic] properly determinable in an execution proceeding, in that:
>
> A. the judgment of [October 21], 1991, upon which the execution and levy was

based, clearly established that any interest of [Donald] in the property was held as a fiduciary and the interest is, therefore, trust property;

B. Supreme Court Rules [sic] 76.10 authorizes [Velma] to intervene in the execution proceedings to prove any claim she may have in and to the property; and

C. the execution proceeding thus provides the proper forum to determine questions of title and ownership interests, to preserve all parties' rights and to avoid a second, duplicative trial."

The point contains a fatal flaw. Subparagraph "A" of the point declares that any interest of Donald in the property was held as a fiduciary. That premise is wrong in that Donald holds no separate interest in Lot 111. As explained in *Merrill Lynch*, 591 S.W.2d at 215[9]:

"[Where] a judgment and execution are against the husband alone such judgment cannot in any way affect property held by the husband and wife in the entirety. Neither can it affect any supposed separate interest of the husband, for he has no separate interest."

If Lot 111 is to be a source from which Phillips collects the judgment against Donald, Phillips must trace the commingled funds into Lot 111, thereby establishing a constructive trust or equitable lien. *Cross*, 246 S.W.2d at 803. The record does not show Phillips made any attempt to do so. There is no clue about how the Whitneys were paid for Lot 111. That is, the record does not reveal whether Donald paid the Whitneys, whether Velma paid the Whitneys, or whether Donald and Velma each paid part of the price and financed the rest through a loan.

Whether Phillips will be able to trace the commingled funds into Lot 111, thereby establishing a constructive trust or equitable lien on it, is a subject about which we need not speculate. Furthermore, whether Donald and Velma can plead the result of this appeal as res judicata or collateral estoppel in a future attempt by Phillips to establish a constructive trust or equitable lien on Lot 111 is not before us for determination. We

likewise need not decide whether Phillips is correct in claiming in subparagraph "C" of her second point that an "execution proceeding" is "the proper forum to determine questions of title and ownership interests."

Phillips's second point is denied, and the judgment appealed from is affirmed.

MONTGOMERY, C.J., and SHRUM, J., concur.

## ON MOTION FOR REHEARING OR, IN THE ALTERNATIVE, TO TRANSFER TO SUPREME COURT OF MISSOURI

PER CURIAM.

In a motion for rehearing or, in the alternative, to transfer this appeal to the Supreme Court of Missouri, Phillips asserts this court erred "in holding that no evidence was present in the record tracing trust assets into the property in question." Phillips directs us to a segment of the legal file where the depositions of Donald and Velma appear. Because Donald and Velma refused to answer certain questions about Lot 111 and other subjects, Phillips argues a court can infer the answers would have been adverse to Donald and Velma, and a court can further infer trust funds were used to buy Lot 111.

■ The first flaw in Phillips's contention is that, as reported in the principal opinion, the trial court entered judgment September 25, 1995. The depositions referred to by Phillips are stamped "Filed" by the clerk of the trial court December 5, 1995, a month after the notice of appeal was filed. It thus appears the depositions were not before the trial court when it granted Velma's petition to quash the execution.

Furthermore, as also noted in the principal opinion, the record on appeal consists of only a legal file. Nothing in that file shows the depositions were presented to the trial court when Velma's petition to quash was argued on August 4, 1995.

■ Our review of the trial court's judgment is limited to the evidence which was properly before that court. *F.D.I.C. v. War-*

*mann,* 859 S.W.2d 948, 952[3] (Mo.App.E.D. 1993). Consequently, we cannot consider the portions of the depositions identified by Phillips.

Phillips also asserts this court overlooked facts in the record indicating Donald and Velma are not married, hence no tenancy by the entirety can exist. That assertion ignores the averment in the statement of facts in Phillips's brief that Velma is Donald's wife and that they married December 31, 1985.[1] It also ignores Velma's deposition testimony—were we authorized to consider it—that she is Donald's wife.

Finally, as underscored in the principal opinion, the narrow issue before the trial court was whether to quash a levy on entireties property under an execution to collect a judgment against Donald alone. Nothing in the record indicates Phillips pled, or attempted to prove, a constructive trust or equitable lien on Lot 111.

Phillips's post-opinion motion is denied.