**Martin KOCH, Jr., et al., Appellants,**

v.

**ST. LOUIS COUNTY, Missouri,
et al., Respondents.**

**No. ED 105236**

Missouri Court of Appeals,
Eastern District,
DIVISION ONE.

Filed: August 29, 2017

ATTORNEYS FOR APPELLANT: Bruce A. Morrison, Kathleen G. Henry, Henry B. Robertson, 319 North Fourth Street, Suite 800, St. Louis, MO 63102.

ATTORNEYS FOR RESPONDENT: Lorena V. Van Kaenel, Michael A. Shuman, 41 S. Central Avenue, 9th Floor, Clayton, MO 63105.

ROBERT G. DOWD, JR., Presiding Judge

Martin Koch, Steve Brewer and Richard Brown (collectively "Appellants") appeal from the summary judgment entered against them, finding that St. Louis County, the County Executive and members of the County Council (collectively "the Coun-

ty") have authority to sell a portion of Sylvan Spring Park to the Veteran Affairs Administration for expansion of the Jefferson Barracks cemetery. Appellants assert that the park was dedicated to the public to be used only as a park in perpetuity or, alternatively, is held by the County in trust for the public's use as park only, precluding the County from selling it for use as something other than a park. Appellants have failed to establish the elements of a common law dedication or the existence of any type of a trust. Therefore, we affirm the summary judgment in the County's favor.

In 1950, St. Louis County acquired the land now known as Sylvan Springs Park by quitclaim deed from the federal government, acting through the General Services Administration ("GSA"). The deed was made "under and pursuant to" the Federal Property and Administrative Services Act of 1949, the Surplus Property Act of 1944, as amended, and all regulations promulgated thereunder. Those laws, and particularly the amendments to the Surplus Property Act enacted by Public Law 616 in 1948, authorized the GSA to convey to a political subdivision like St. Louis County "all of the right, title and interest of the United States in and to any surplus land, ... which, in the determination of the Secretary of the Interior, is suitable and desirable for use as a public park, public recreational area, or historic monument, for the benefit of the public." Pub. L. No. 616. Such conveyances were to be made at half the fair market value of the property. *Id.* The GSA was required to include in any deed of such a conveyance a provision mandating that the property "shall be used and maintained for the purpose for which it was conveyed for a period of not less than twenty years;" if the property ceased to be used for that purpose, it reverted to the federal government. *Id.* The GSA was also authorized to include other conditions in the deed necessary to safeguard the interests of the United States. *Id.*

Consistent with these provisions, the 1950 deed provides that the GSA does "remise, release and forever quitclaim" the property at issue here to St. Louis County "for and in consideration of the continuous use and maintenance of the premises by [St. Louis County] as and for public park and recreational purposes, and in consideration of the payment of [$3,500]." The market value of this land at the time was $7,000. Excepted from the conveyance were the government's utility lines and systems on that land, and the government also expressly reserved necessary rights-of-way and easements for continuous use, along with certain mining rights. The deed provided that St. Louis County was "to have and to hold the said premises ... subject to the reservations, conditions and covenants herein contained." There are seven enumerated conditions, the first of which is the one required by the Surplus Property Act, and it states:

> For a period of twenty (20) years the premises above described shall be continuously used and maintained as and for public park and recreational purposes, for incidental purposes pertaining thereto, but for no other purposes.

Also during that twenty-year period, the covenants required St. Louis County to file biennial reports with the GSA demonstrating the premises was being used as intended and to obtain the GSA's permission before selling, leasing or otherwise disposing of the property. Another condition stated that the federal government had the right to possess and use the property free of charge during any national emergency; if this were to occur during the first twenty years, St. Louis County was responsible for all costs associated with this emergency use, but after that twenty-year period,

the federal government would have to pay such costs.

St. Louis County could "secure abrogation of all the said conditions and covenant" by paying the balance of the full market value for the property during that twenty-year period. In the event of a breach of any of these conditions or covenants during the twenty-year period "all right, title and interest in and to all of the said premises shall revert to and become the property of the United States of America at its option" and it shall have the immediate right of entry and possession of the property. But, the deed provided, "in the event the [GSA] fails to exercise the option to re-enter the premises for any such breach within twenty-one years from the date hereof, all of said conditions and covenants, together with all rights of the United States of America to re-enter thereon as hereinabove provided, shall as of that date terminate and be extinguished."

The record on appeal reveals the following undisputed facts about what has happened since the execution of the 1950 deed. The land has been used by the public and maintained by the County as a park since 1950. The County held a public dedication ceremony for the park, which was initially named Rock Springs Park, but in 1954 became Sylvan Springs Park. In 1969, voters in St. Louis County approved a general obligation bond for the development of new parks and the improvement of existing parks, including Sylvan Springs Park. The bond proceeds were all spent by the 1980s. In 1980, the County leased a portion of the park to Bi-State for construction of a Park and Ride Lot. The County now intends to sell 38 of the 70 acres that comprises the park to the Veterans Affairs Administration for expansion of neighboring Jefferson Barracks cemetery, which is predicted to reach capacity for gravesites within its existing perimeters in the next five years. As part of its legislative process of approving this sale, the County Council held a public forum in May of 2013, at which time it received a petition with over 2,000 signatures in support of this proposed sale.

Appellants, as resident taxpayers in St. Louis County, filed this lawsuit asking for a declaration that the County had no lawful authority to sell, transfer or convey any part of the park for development as a cemetery and seeking an injunction preventing it from doing so. Appellants asserted several alternative grounds for support of its position: (1) that the 1950 deed was a common law dedication of the land to the public by the federal government; (2) that the County's actions thereafter constituted a common law dedication by the County; or (3) that the 1969 bond created a trust under which the County was to maintain the land as a park for the benefit of the public.[1] The parties filed cross-motions for summary judgment, and the trial court granted the County's motion and denied Appellants' motion. This appeal follows.

We review the summary judgment de novo. *ITT Commercial Finance Corporation v. Mid–America Marine Supply Corporation*, 854 S.W.2d 371, 376 (Mo. banc 1993). We review the record in the light most favorable to the party against whom judgment was entered and afford that party the benefit of all reasonable inferences. *Id.* Summary judgment is appropriate if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Id.* at 380; Rule 74.04. A defending party, like the County here,

---

1. They also alleged the creation of a trust based on sales taxes passed in 2000 and 2013, but have since abandoned that theory of recovery.

may establish a right to summary judgment by showing facts that negate one of the elements of the claim against it, a lack of evidence to support one of those elements or no genuine dispute of the facts needed to prove its affirmative defense to that claim. *See ITT Commercial,* 854 S.W.2d at 381. The County has established that Appellants cannot prove the elements of a common law dedication or the existence of a trust.

▬▬ The first two points on appeal address the common law dedication claims. Common law dedication is proven by showing: (1) that the owner, by unequivocal action, intended to dedicate the land to public use; (2) that the land dedicated was accepted by the public; and (3) that the land dedicated is used by the public. *Whittom v. Alexander–Richardson Partnership,* 851 S.W.2d 504, 508 (Mo. banc 1993). "A common law dedication is a continuous, irrevocable offer to dedicate, which the dedicator cannot retract." *Citizens for Preservation of Buehler Park v. City of Rolla,* 230 S.W.3d 635, 639 (Mo. App. S.D. 2007) (*"Buehler Park"*) (internal quotations marks and citations omitted). Though a dedication generally cannot be revoked, the property reverts to the landowner or successors if it is no longer possible to fulfill the purpose of the dedication or if the dedicated use of property is abandoned. *Id.* Here, there is no contention that the land cannot be used as a park or that use as a park has been abandoned.

▬▬ The landowner's intent to set apart land for public use is the foundation of common law dedication:

> Such intent must be unequivocally manifested, expressly or by plain implication. The owner's acts or declarations must convincingly demonstrate a purpose to create a public right to the land adverse to himself. Common law dedication requires the landowner to do something by

act or by word which would unequivocally point to but one conclusion, namely, that the owner intended to dedicate to public use.

*Tinnes v. Brand,* 248 S.W.3d 113, 115-116, (Mo. App. S.D. 2008). "The proof should be so convincing, full, persuasive and cogent as to leave no reasonable doubt of the existence of the owner's consent or intent, and the acts relied upon must not be consistent with any construction other than that of a dedication." *Id.* at 116.

In our review of common law dedication cases in Missouri, most of which involve public streets, unequivocal intent to dedicate is often manifested with words such as "to public use forever." *See Weakley v. State Highway Commission,* 364 S.W.2d 608, 612 (Mo. 1963) (intention of landowner to dedicate to public use "unequivocally manifested" by written dedication "to public use forever"); *Ackerman v. Roufa,* 584 S.W.2d 100, 102-03 (Mo. App. E.D. 1979) (evidence of common law dedication included dedication of subdivision streets "to public use forever"). These permanent dedications for a particular purposes are significantly different from temporal restrictions on use of a property that expire by time limitation or by action. *See Haertlein v. Rubin,* 195 S.W.2d 480, 482-83 (Mo. 1946) (differentiating restrictions on subdivision use that were of a "temporal nature" and expired by time limitation or by action from dedication of portion of subdivision "to public use forever").

▬▬ Appellants rely on the 1950 deed to demonstrate the federal government's intent to dedicate this land to the public for use as a park only. Appellants point first to the consideration clause, which states that conveyance of the land is in consideration for the "continuous use and maintenance of the premises by the County as and for public park and recreational pur-

poses." But the conveyance is also expressly subject to the listed restrictions, conditions and covenants, which further clarify that by "continuous use" the GSA did not mean forever. Rather, that condition was a temporal restriction on use of the land as a park for the first twenty years after execution of the deed. The fact that the condition expired after twenty years—or upon the County buying out of it—is contrary to a conclusion that the GSA intended the land be used as stated in that condition in perpetuity. The fact that the consequence for breaching that condition was reversion of ownership to the federal government is also inconsistent with the conclusion that this was a dedication to the public because when a landowner dedicates land to the public, his reversionary interest does not expire unless and until the dedicated use is abandoned or impossible. Once the temporary restriction on use expired—here, after twenty years—not only did the federal government's reversionary interest terminate, so did the requirement that the land continue being used in any particular way. The language of the deed is expressly contrary to—much less an unequivocal manifestation of—an intent to permanently dedicate this land to the public for use as a park.

Appellants also contend that the federal government's right to occupy the land for national emergencies even after that twenty-year period ended "assumes the continued existence of open space owned and maintained by the County." The federal government's right to occupy the land due to a national emergency does not by any term in the deed, nor for any logical reason we can see, require the land to be a park or otherwise establish the GSA's unequivocal intention to dedicate the land to the public as a park in perpetuity. This does not even begin to rise to the level of required proof of intent, especially when the deed is read as a whole.

The case of *Buehler Park* illustrates the type of proof that does rise to the level of showing the dedicator's unequivocal intent. There, the City of Rolla's chamber of commerce had maintained the property as a park until 1957 when it began discussing the need to deed the property to the city so that the city could maintain and improve it. 230 S.W.3d at 637. In 1958, the city indicated that it wanted to make definitive plans for the park and asked for the chamber to deed it to the city. *Id.* Minutes from the parties' meeting about the deed indicated that they agreed the park would be "deeded to the city to be used from now on as a park in memory of Chief Buehler." *Id.* The deed itself stated that "it is understood" that the park is conveyed to the city "for Park purposes only and none other, and be known as Buehler Park." *Id.* Since that time, the city maintained and the public used the property as a park. *Id.* at 638. When the city later attempted to sell the property, a citizen group sought to enjoin the sale on the ground that the park had been dedicated to the public. *Id.* The appellate court found that the language of the deed saying the park is conveyed to the city "for park purposes and none other" and naming the park demonstrated the chamber's intent to dedicate the property for public use. *Id.* at 640. The fact that that deed stated it was giving the city the property "to have and to hold ... forever" demonstrated that the chamber maintained no right of re-entry or reversion upon the happening of some event or the expiration of some condition that would terminate the interest conveyed in the deed. *Id.* Thus, the court concluded the conveyance was either a common law dedication or a fee simple absolute. *Id.* Because the deed language and the parties' discussion leading up to the deed clearly and unequivocally evidenced the chamber's

intent that the property be used only as a park, the court of appeals concluded this was a common law dedication. *Id.* at 640-41. It did not matter that the deed conveyed the property to the city, as opposed to a "dedication in the strict sense" to the public because the intent was that the city was "a proxy for the public." *Id.* at 641. It was deeded to the city specifically so that the city could maintain it as a park for the public. *Id.*

Unlike in *Buehler Park* where there was no time limit placed on how long the city in that case had to use the land as a park, here there was an express time limit on the use restriction. And, unlike *Buehler Park*, there is no evidence in this case of the negotiations or discussions that led to this deed from which we can glean any insight to the GSA's intent. The only other source of information might be the Surplus Property Act under which the deed was made, and those provisions are entirely consistent with the conclusion that GSA intended to impose a twenty-year restriction on the use of this land as a park and did not intend to dedicate it to the public forever.[2] This deed falls well short of proving the unequivocal manifestation of intent needed to succeed on a common law dedication claim. The deed does not convincingly demonstrate that the federal government intended the land to be used as a park or for recreational purposes forever. In fact, the only conclusions that can be drawn from the language of the deed are

contrary to the notion that it was a common law dedication.

■ Since the 1950 deed did not constitute a common law dedication from the federal government to the public, the County owned the property subject to the conditions therein. Appellants contend that the County's actions after execution of the deed constitute a common law dedication by *the County* to the public for use of the land as a public park. Appellants rely on the general undisputed fact that since 1950, the park has been held out to the public as a park and used by the public for park and recreation purposes. But it is also undisputed that the County leased a portion of the park to Bi-State for construction of a Park and Ride Lot, which is not a park or recreational use, but a commercial or transportation use. Taking that action contradicts that the County intended to dedicate this to the public for use exclusively and eternally as a park. Moreover, it appears no one challenged the County's lease to Bi-State, suggesting the public acquiesced to that non-park use. Appellants also point to the fact that in 1954, the County held "a public dedication ceremony" for the park. But without more information or details about what occurred at the ceremony, this does not demonstrate the County's unequivocal intent to dedicate its property to the public forever. Nor—again, without more details—must we construe the ceremony as being inconsistent with the County's ownership of the park under the 1950 deed because it was

---

**2.** We note that the Surplus Property Act, and related World War II inspired legislation, has expired or been repealed, and provisions relating to disposition by the federal government of surplus property are currently found at 40 U.S.C. Sections 541 *et seq.* Now, rather than a twenty-year restriction on use, the statute requires deeds conveying surplus property for park and recreation purposes to include the following provision: "all of the property be used and maintained for the purpose for

which it was conveyed *in perpetuity*, and that if the property ceases to be used or maintained for that purpose, all or any portion of the property shall, in its then existing condition, at the option of the Government, revert to the Government." 40 U.S.C. 550(e)(4)(A) (emphasis added). We need not decide whether a deed executed under this statute and containing this provision would be evidence of the federal government's intent to dedicate the land to the public.

still required to maintain the land as a park at that time as the twenty-year condition on use had not yet expired.

■■■ Finally, Appellants point to the County's ongoing maintenance and improvements to this property as a park. Again, between 1950 and 1970, that conduct can be construed as simply consistent with the deed. The fact that the County kept the land as a park for some length of time beyond what was required in the deed does not lead inextricably to the conclusion that the County intended to dedicate this land to the public for use as a park *forever*. Without more, a landowner's acquiescence to long term use of disputed land by the public is not evidence that the landowner had the requisite intent to dedicate that land to the public. *See Shapiro Bros., Inc. v. Jones–Festus Properties, LLC*, 205 S.W.3d 270, 277 (Mo. App. E.D. 2006) (inaction in preventing public use, even over a substantial amount of time, was not evidence of unequivocal intention to dedicate).[3]

Without unequivocal evidence of the owner's intent to dedicate this land to the public for use only as a park forever, we need not reach the other elements of Appellants' common law dedication claims—namely, whether the public accepted the dedication and used the land as a public park. Negating the intent element entitled the County to summary judgment on these claims. Points I and II are denied.

■■■ In their third point on appeal, Appellants contend the County holds this land in an implied trust for the public

based on a 1969 bond measure, which voters approved for the purpose of creating new and improving existing parks, including Sylvan Springs, and thus the County is prohibited from selling it. As Appellants correctly state, use of this bond money was limited to the purposes for which it was approved. *Drey v. McNary*, 529 S.W.2d 403, 409 (Mo. 1975). "Such money is *similar* to trust money and may be utilized within the scope of the proposition approved by the people but not beyond." *Id.* (emphasis added). The recipient of the bond revenue is essentially the custodian of that money with the obligation, like a trust fund custodian, "to see that the fund was applied to the purposes for which it was created and no other." *Thompson v. City of St. Louis*, 253 S.W. 969, 972 (Mo. 1923). But the duty to accurately apply the funds is "the extent of its obligation." *Id.*[4]

Here, the voters approved the bond money for the purpose of acquiring new and improving existing parks, and the County was obligated to see that the money was so spent. The bond language clearly did not impose any other duties upon the County. And it is undisputed that it did just that: Appellants did not deny the County's assertion in its motion for summary judgment that it has expended the bond funds *for the purposes described in the ballot language* and that those bond funds were exhausted in the 1980s. There is nothing in the record indicating that the bond measure required the parks acquired or improved with bond revenue to remain parks forever or otherwise limited the County's rights as owners of the park, including the ability to sell. Thus, it ap-

---

**3.** Appellants cite to *Buehler Park* for the proposition that the public's use and the County's maintenance of the park for a substantial amount of time should at least operate "to preclude denial of" the intention. For the same reasons discussed above, *Buehler Park* is distinguishable as there was considerably more convincing and explicit evidence in that

case of the landowner's intent to dedicate the park to the public forever.

**4.** Appellants' insistence that under *Drey*, the 1969 bond *is* a trust, is misplaced. That case, and others, merely use the analogy of a trust to explain the duties of a bond recipient.

pears the County has fulfilled the only obligation arising out of that 1969 bond issue.

■■■ Appellants claim that the public should be allowed to "follow" the bond funds and that a constructive trust should be imposed on the land that was improved with the bond proceeds. "A constructive trust is an equitable device employed by courts of equity to remedy a situation where a party has been *wrongfully* deprived of some right, title or interest in property as a result of fraud or violation of confidence or faith reposed in another." *Lynch v. Lynch*, 260 S.W.3d 834,837 (Mo. banc 2008) (emphasis added). Where a trustee by *wrongfully* disposing of trust property acquires other property, the beneficiary can "follow the trust property into its product, and can enforce a constructive trust or equitable lien upon the product." *Cross v. Cross*, 362 Mo. 1098, 246 S.W.2d 801, 803 (1952). Here, there is no allegation that the County did anything wrong with the bond proceeds, and thus no basis in equity to impose a constructive trust as a remedy. Again, it is undisputed that the County used the bond proceeds for the purpose the voters intended. Thus, Appellants' cited cases are distinguishable. *See, e.g., Sauer v. Hicks*, 662 S.W.2d 310, 312 (Mo. App. S.D. 1983) (court imposed constructive trust on real estate *fraudulently* acquired).

Because Appellants have failed to establish proof of the existence of, or equitable basis for imposing, a trust, the County is entitled to summary judgment on this claim. Point III is denied.

The judgment is affirmed.

Sherri B. Sullivan, J. and Kurt S. Odenwald, J., concur.